NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11823

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 380316  vs.
SEX OFFENDER REGISTRY BOARD.


Middlesex.     September 9, 2015. - December 11, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.


Sex Offender.  Sex Offender Registration and Community
    Notification Act.  Constitutional Law, Sex offender, Burden
    of proof.  Due Process of Law, Sex offender, Hearing,
    Standard of proof.  Practice, Civil, Sex offender, Standard
    of proof.  Internet.



Civil action commenced in the Superior Court Department on
November 21, 2013.

The case was heard by Dennis J. Curran, J., on a motion for
judgment on the pleadings.

The Supreme Judicial Court granted an application for
direct appellate review.


Brandon L. Campbell for the plaintiff.
David L. Chenail (Elisha W. Willis with him) for the
defendant.
Beth L. Eisenberg & Larni S. Levy, Committee for Public
Counsel Services, & Eric B. Tennen, for Committee for Public
Counsel Services & another, amici curiae, submitted a brief.
Andrew S. Crouch, for Youth Advocacy Division of the
Committee for Public Counsel Services & another, amici curiae,

submitted a brief.

LENK, J.  We are asked in this case to consider anew the standard of proof that the Sex Offender Registry Board (SORB) must satisfy in order to classify a convicted sex offender under the provisions of the sex offender registry law, G. L. c. 6, §§ 178C-178Q.  The plaintiff, John Doe No. 380316 (Doe), is a convicted sex offender who was classified by a preponderance of the evidence as having a moderate risk of reoffense.  In Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd., 428 Mass. 90, 91 (1998) (Doe No. 972), we held that SORB need only prove the appropriateness of a sex offender's risk classification by a preponderance of the evidence.  In light of amendments to the sex offender registry law and other developments since our decision in that case, however, Doe contends that the preponderance standard no longer adequately protects his due process rights.  We agree.  For the reasons stated below, we hold that SORB is constitutionally required to prove the appropriateness of an offender's risk classification by clear and convincing evidence.[1]

    1.  Background.  When Doe was thirty-five years old, he

---

[1] We acknowledge the amicus briefs submitted by the Committee for Public Counsel Services and the Massachusetts Association for the Treatment of Sexual Abusers, and by the Youth Advocacy Division of the Committee for Public Counsel Services and the Children's Law Center of Massachusetts.

reportedly "twisted" the penis of his six year old nephew through the child's underwear while both were in the bathroom. Doe apologized to the boy immediately after the incident, and they hugged each other. After several incidents of incontinence over the following weeks, however, the boy told his mother what had happened, and she thereafter reported the incident to the police. Following a jury trial, Doe was found guilty of indecent assault and battery on a child under fourteen, G. L. c. 6, § 13B, a sex offense requiring SORB registration under G. L. c. 6, §§ 178C-178CD.[2] Doe had not previously been convicted of a sex offense. On or about June 14, 2013, while Doe was still incarcerated, SORB preliminarily recommended that Doe be classified as a level three sex offender, the level assigned to convicted sex offenders posing the highest risk of reoffense. After Doe challenged that recommendation, however, a SORB hearing examiner determined by a preponderance of the evidence that he was more appropriately classified as a level two sex offender, the level assigned to convicted sex offenders posing only a moderate risk of reoffense. That determination was made on October 23, 2013.

The hearing examiner relied on the regulatory factors promulgated by SORB, 803 Code Mass. Regs. § 1.40(1)-(24) (2013),

---

[2] Doe was also convicted of other offenses arising out of the same incident that are not relevant to our decision in this case.

to determine Doe's degree of dangerousness and risk of reoffense. The examiner particularly noted that Doe had sexually abused his "extravulnerable" nephew,[3] that he appeared to be unwilling to admit to the offense despite his conviction, and that the victim suffered continuing emotional trauma as a result of the incident. The examiner recognized that some "favorable facts" diminished Doe's risk of reoffense, including that Doe had not been reported for disciplinary violations and had attended Alcoholics Anonymous meetings during his incarceration, and that he would likely have a stable home environment living with his sister upon his release.[4] Nevertheless, the examiner found that these mitigating factors only somewhat offset the aggravating factors present in Doe's case, and determined that Doe was appropriately classified as a level two offender.

Doe sought judicial review in the Superior Court, pursuant to G. L. c. 30A, § 14, and G. L. c. 6, § 178M. His level two classification was affirmed and we granted Doe's application for direct appellate review. On appeal, Doe argues that due process

---

[3] As defined by 803 Code Mass. Regs. § 1.40(9)(c)(4) (2013), "'extra-vulnerable' means any condition or circumstance, including, but not limited to a physical or mental condition that tends to render a victim more susceptible to sexual assault. An extra-vulnerable victim shall also include a victim under the age of ten and over the age of [sixty]."

[4] The sister is not the same person as the mother of Doe's nephew.

under both the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights requires SORB to prove its classification determinations by clear and convincing evidence. Additionally, he argues that this court should reverse his classification because SORB failed to prove that he poses a level two degree of risk and dangerousness to the public even under a preponderance of the evidence standard. Finally, Doe asks this court to order SORB to stop disseminating his registry data on the Internet, on the grounds that the 2013 amendment to the sex offender registry law that required the Internet publication of level two offenders' registry information, St. 2013, c. 38, §§ 7, 9, was not retroactive as applied to him.

We conclude that due process requires that a sex offender's risk level be proved by clear and convincing evidence. The risk classifications that SORB must make now have consequences for those who are classified that are far greater than was the case when we decided Doe No. 972. The preponderance standard no longer adequately protects against the possibility that those consequences might be visited upon individuals who do not pose the requisite degree of risk and dangerousness. Accordingly, we vacate the decision of the Superior Court affirming SORB's classification of Doe as a level two sex offender. We remand the matter to the Superior Court for entry of an order to SORB

to conduct an evidentiary hearing de novo under the heightened standard, and to cease disseminating Doe's registry information on the Internet while that hearing is pending.  At the hearing, both Doe and SORB may introduce new evidence relevant to a final classification determination.  The hearing examiner may also consider evidence, but not findings of fact, from Doe's original hearing.  Contrast Doe, Sex Offender Registry Bd. No. 7083 v. Sex Offender Registry Bd., 472 Mass. 475, 489-490 (2015) (Doe No. 7083).

2.  Standard of review and stare decisis.  A reviewing court may set aside or modify a hearing examiner's decision if it was:

> "(a) In violation of constitutional provisions; or
>
> "(b) In excess of statutory authority or jurisdiction of the agency; or
>
> "(c) Based upon an error of law; or
>
> "(d) Made upon unlawful procedure; or
>
> "(e) Unsupported by substantial evidence; or
>
> "(f) Unwarranted by facts found by the court on the record . . . ; or
>
> "(g) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law."

G. L. c. 30A, § 14 (7).  The appellant bears the burden of showing that one of these conditions has been met.  See Coe v. Sex Offender Registry Bd., 442 Mass. 250, 258 (2004).

Doe argues that SORB committed a constitutional error by proving his risk of reoffense by only a preponderance of the evidence.[5] Because we held explicitly in Doe No. 972, 428 Mass. at 91, that "the appropriateness of an offender's risk classification must be proved by a preponderance of the evidence," to rule in Doe's favor we must overrule our decision in that case.[6] The principle of stare decisis would normally

_____

[5] Doe also argues that it was error for SORB to classify him as a level two sex offender even under the preponderance standard, because the evidence considered by the hearing examiner did not support the conclusion that he posed the requisite degree of risk and dangerousness. If this claim were correct, we would not need to reach the question whether due process requires a higher standard of proof than a preponderance of the evidence. In reviewing the hearing examiner's decision, however, we "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14 (7) (g). "A court may not displace an [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Ten Local Citizen Group v. New England Wind, LLC, 457 Mass. 222, 231 (2010), quoting Southern Worcester County Reg'l Vocational Sch. Dist. v. Labor Relations Comm'n, 386 Mass. 414, 420 (1982). Doe's level two classification was supported by substantial evidence and was not otherwise arbitrary or capricious: the hearing examiner determined that mitigating factors present in Doe's case did not sufficiently counterbalance other factors indicating that Doe posed a risk of reoffense. Given this, we conclude that Doe was appropriately classified as a level two risk and danger based upon a preponderance of the evidence.

[6] The Legislature codified the preponderance standard in 1999, following our decision in Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd., 428 Mass. 90 (1998) (Doe No. 972). See G. L. c. 6, § 178L (2), inserted by St. 1999, c. 74, § 2. This is not dispositive of the question before us, however, since due process "is not a technical conception with a

prevent us from reconsidering settled law.  See Stonehill College v. Massachusetts Comm'n Against Discrimination, 441 Mass. 549, 562, cert. denied sub nom. Wilfert Bros. Realty Co. v. Massachusetts Comm'n Against Discrimination, 543 U.S. 979 (2004).  However, "[t]he force of stare decisis is at its nadir in cases concerning procedural rules that implicate fundamental constitutional provisions."  Alleyne v. United States, 133 S. Ct. 2151, 2163 n.5 (2013).  Furthermore, "[t]he requirements of procedural due process are pragmatic and flexible, not rigid or hypertechnical."  Roe v. Attorney Gen., 434 Mass. 418, 427 (2001).  Given the flexible nature of the procedural due process right at issue in this case, and given the substantial changes to the sex offender registry law and other developments since our decision in Doe No. 972, we think it appropriate to revisit that decision.

In order to determine whether reliance on the preponderance standard violated Doe's due process rights, we first consider our reasoning in Doe No. 972 in light of the 1996 sex offender law in effect at the time it was decided.  See St. 1996, c. 239, § 1.  We then examine subsequent amendments to the sex offender registry law and other developments that draw into question

fixed content unrelated to time, place and circumstances." Mathews v. Eldridge, 424 U.S. 319, 334 (1976), quoting Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 895 (1961).

whether the preponderance standard continues adequately to protect Doe's due process rights. Finally, we consider the standard of proof that due process requires in light of these changes.

3. The 1996 sex offender registry law. In 1996, the Legislature passed the State's first sex offender registry law, St. 1996, c. 239, § 1. An early version of the bill that was eventually enacted described its purpose as "to protect the public from the 'danger of recidivism posed by sex offenders' and to aid law enforcement officials in the apprehension of sex offenders by providing them with 'additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation.'" Doe No. 972, 428 Mass. at 91-92, quoting Opinion of the Justices, 423 Mass. 1201, 1204 (1996). To achieve these aims, the enacted statute required individuals convicted of any offenses from a list of enumerated "sex offenses" to register with the State their names, addresses, and identifying information. G. L. c. 6, §§ 178C-178F, inserted by St. 1996, c. 239, § 1. The State disseminated that information publicly to a lesser or greater extent depending on the level of risk of reoffense that a registered offender was deemed to pose. G. L. c. 6, § 178K (2), inserted by St. 1996, c. 239, § 1.

The 1996 law enumerated a set of factors that the

Legislature considered relevant to convicted sex offenders' risk of reoffense.  G. L. c. 6, § 178K (1), inserted by St. 1996, c. 239, § 1.  In addition, the law created SORB to "promulgate guidelines for determining the level of risk of reoffense" of convicted sex offenders, and to apply those guidelines "to assess the risk level of particular offenders."  Id.  An offender assessed by SORB as posing a low risk of reoffense was classified as a level one offender, and his or her registry information was only disclosed to police departments where he or she lived or worked, to the Federal Bureau of Investigation, and upon request to adults for their own protection or for the protection of individuals in their care.  G. L. c. 6, §§ 178I-178K, inserted by St. 1996, c. 239, § 1.  An offender assessed by SORB as posing a moderate risk of reoffense was classified as a level two offender, and his or her registry information was additionally disclosed to organizations such as schools, day care centers, religious and youth organizations, and sports leagues in the offender's communities.  G. L. c. 6, § 178K (2) (b), inserted by St. 1996, c. 239, § 1.  A sex offender assessed by SORB as posing a high risk of reoffense was classified as a level three offender, and, in addition to the dissemination provided for level two offenders, his or her information was actively disseminated by the police to individual members of the public likely to encounter the

offender. G. L. c. 6, § 178K (2) (c), inserted by St. 1996, c. 239, § 1. Sex offenders were not entitled to an evidentiary hearing to contest SORB's risk assessment. See G. L. c. 6, §§ 178K-178M, inserted by St. 1996, c. 239, § 1.

4. Doe No. 972. In Doe No. 972, 428 Mass. at 98, we held that convicted sex offenders had a constitutional right under the Fourteenth Amendment and art. 12 to an evidentiary hearing before SORB regarding the appropriateness of their risk level classifications. We further held that SORB was required to prove the appropriateness of those classifications by a preponderance of the evidence. Id. at 103.

To determine whether the preponderance standard satisfied due process, we applied the test set forth by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319 (1976) (Mathews). That test balances the private interests affected by an agency decision; the risk of an erroneous deprivation of those interests; the probable value, if any, of additional or substitute procedural safeguards; and the governmental interests involved. See Doe No. 972, 428 Mass. at 100, citing Mathews, supra at 335.

With respect to the private interests affected, we explained that a convicted sex offender did not face a potential loss of liberty as a result of his or her classification level, and that "the stigma of being required to register as a sex

offender and of having information regarding sex offenses disseminated to the public" was not substantial enough to require a heightened standard of proof. Doe No. 972, 428 Mass. at 102. The risk of an erroneous classification was thought to be minimal because both the offender and SORB had the opportunity to present evidence and examine and cross-examine witnesses at a classification hearing, because SORB was required to make "particularized, specific, and detailed findings" based on a set of statutory factors, and because the offender could appeal SORB's decision in court. Id. We noted also that applying a higher standard might lead to erroneous underclassifications. Id. at 102-103.

Weighing the State's interest in "protect[ing] children and other vulnerable people from recidivistic sex offenders" against these factors, we decided that due process under the State and Federal Constitutions required proof of the appropriateness of an offender's risk classification only by a preponderance of the evidence. Id. at 103-104. In our view at the time, the "possible injury to sex offenders from being erroneously overclassified" was "nearly equal" to "any harm to the State from an erroneous underclassification." Id. at 104 n.14.

5. Subsequent developments. The sex offender registry law has undergone significant revisions since our decision in Doe No. 972. Amendments to the statute in 1999 provided for risk

classification hearings and codified the preponderance standard as constitutional safeguards.  See G. L. c. 6, § 178L (2), inserted by St. 1999, c. 74, § 2.  On balance, however, legislative changes have more often imposed extra burdens on registered offenders than provided them with additional protections.  More offenses are now subject to a registration requirement.  Sex offenders face increasingly stringent affirmative reporting requirements, and the penalties for failing to meet those requirements are harsher.  They are also confronted with other limitations based on their registered sex offender status.  Information about registered offenders is being disseminated more broadly, including on the Internet.  Furthermore, there is reason to question whether SORB's risk classification guidelines continue to reflect accurately current scholarship regarding statutory factors that concern risk assessment.  These developments are described in turn below.

Additional offenses requiring registration have been added to the sex offender registry law at least four times since we decided Doe No. 972.  See St. 2011, c. 178, §§ 1-3; St. 2010, c. 267, §§ 1-3; St. 2003, c. 77, § 3; St. 1999, c. 74, § 2.  While the sex offenses enumerated in 1996 were mostly crimes of physical violence against children and the developmentally disabled, see G. L. c. 6, § 178C, inserted by St. 1996, c. 239, § 1, many of the offenses added later have not been similarly

targeted. See, e.g., St. 2011, c. 178, §§ 1-3 (enticing child under eighteen via electronic communication); St. 1999, c. 74, § 2 (enticing person for prostitution; incestuous marriage or intercourse; and disseminating child pornography). The addition of these offenses may make more challenging the task of accurately classifying the risk of reoffense that specific offenders pose. Cf. Doe No. 972, 428 Mass. at 105 (Marshall, J., concurring in part and dissenting in part) ("careful and individualized due process is necessary to sort sexual predators likely to repeat their crimes from large numbers of offenders who pose no danger to the public").

Registration requirements have also steadily become more burdensome. Already at the time we decided Doe No. 972, members of this court had recognized that registration represented a "continuing, intrusive, and humiliating regulation of the person himself," Doe v. Attorney Gen., 426 Mass. 136, 149 (1997) (Fried, J., concurring), and that it cast "a continuing shadow of further criminal sanctions and possible reincarceration" on offenders, Doe No. 972, 428 Mass. at 106 (Marshall, J., concurring in part and dissenting in part). These concerns resonate today: in addition to the requirements imposed in 1996, all offenders must now register any secondary addresses

they have,[7] register the names and addresses of the institutions of higher learning they attend,[8] and re-register ten days prior to establishing a new address.[9] Homeless offenders are additionally required to re-register every thirty days, and to wear a global positioning system device at all times.[10] Furthermore, on release from prison, offenders are subject to intensive parole conditions.[11] Taken together, compliance with

---

[7] Secondary addresses include "all places where a sex offender lives, abides, lodges, or resides for a period of [fourteen] or more days in the aggregate during any calendar year and which is not a sex offender's primary address; or a place where a sex offender routinely lives, abides, lodges, or resides for a period of [four] or more consecutive or nonconsecutive days in any month and which is not a sex offender's permanent address, including any out-of-state address."  G. L. c. 6, § 178C.

[8] See G. L. c. 6, §§ 178C-178E, as appearing in St. 2003, c. 77, §§ 1-4.

[9] See G. L. c. 6, § 178E (h), as appearing in St. 1999, c. 74, § 2.  At the time Doe No. 972 was decided, registration was only required within five days of moving.  G. L. c. 6, § 178E (e), inserted by St. 1996, c. 239, § 1.

[10] See G. L. c. 6, § 178F, as amended by St. 2010, c. 256, § 41 ("[a] homeless sex offender shall verify registration data every [thirty] days with the board"); G. L. c. 6, § 178F1/2 ("[a] homeless sex offender shall appear in person at [the offender's] local police department every [thirty] days"); G. L. c. 6, § 178F3/4, inserted by St. 2010, c. 256, § 42 ("[a] homeless sex offender shall wear a global positioning system [GPS] device, or any comparable device, administered by the commissioner of probation").

[11] For example, a level one offender is required to take a polygraph examination at least every six months, cannot use the Internet without permission of his or her supervising parole officer, cannot own or use computer programs without permission

all of these requirements can be exceptionally burdensome for registered offenders.[12]

In addition to more extensive registration requirements, failure to register now may result in more significant penalties.[13]  If a judge determines that incarceration is a more appropriate penalty for a noncompliant offender than a fine, the judge now must impose a mandatory minimum sentence of at least six months.[14]  A second failure to register results in a mandatory minimum sentence of five years in State prison.[15]  When Doe No. 972 was decided, these penalties were uniformly less

---

of the parole officer, cannot use personal advertisements or the Internet to contact or meet people, cannot possess a camera without permission of the parole officer, and may be fitted with a GPS monitoring device and required to remain outside of "Exclusion Zones" designated by the Parole Board.  See Massachusetts Parole Board, Sex Offender Conditions, Executive Office of Public Safety (Nov. 2006).  The parole conditions for level two and three offenders are more burdensome.  See id.

[12] See Levenson & Cotter, The Effect of Megan's Law on Sex Offender Reintegration, 21 J. Contemp. Crim. Just. 49, 62 (2005) (Levenson & Cotter) ("Feeling alone, isolated, ashamed, embarrassed, hopeless, or fearful may threaten a sex offender's reintegration and recovery and may even trigger some sex offenders to relapse").

[13] An offender may be arrested without a warrant "[w]henever a police officer has probable cause to believe that [he or she] has failed to comply with the registration requirements."  G. L. c. 6, § 178P, as appearing in St. 1999, c. 74, § 2.

[14] G. L. c. 6, § 178H (a), as amended through St. 2010, c. 267, §§ 4-6.

[15] Id.

severe.[16]

Furthermore, offenders face difficulty finding work and housing.  Stigma accounts for some of this difficulty -- employers and landlords often prefer to avoid the perceived risks of having a convicted sex offender on site.  See, e.g., Commonwealth v. Canadyan, 458 Mass. 574, 577 n.8 (2010) (noting " extraordinary obstacles facing sex offenders attempting to secure employment"); Platt, Gangsters to Greyhounds:  The Past, Present, and Future of Offender Registration, 37 N.Y.U. Rev. L. & Soc. Change 727, 762 (2013) (describing how housing discrimination against sex offenders "forc[es] many to live in shelters or be rendered homeless").  Many restrictions also have been codified.  For example, sex offenders are subject to criminal penalties for engaging in ice cream truck vending, regardless of whether their offense involved harm to a child.  See G. L. c. 265, § 48, inserted by St. 2010, c. 256, § 119.  Moreover, households that include a person subject "to a lifetime registration requirement under a State sex offender registration program" are no longer eligible for certain Federal housing programs.  42 U.S.C. § 13663 (2012).  Level three sex offenders also face criminal penalties for living in a nursing

---

[16] Under the 1996 sex offender registry law, there was no mandatory minimum sentence for a first conviction of failure to register.  G. L. c. 6, § 178H, inserted by St. 1996, c. 239, § 1.  A second conviction resulted in a mandatory minimum sentence of ninety days in a house of correction.  Id.

home.[17]  G. L. c. 6, § 178K (2) (e), inserted by St. 2006,
c. 303, § 6.  Such restrictions likely intensify the stigma
associated with being a registered offender.

The sex offender registry law in its current form also
calls for extensive dissemination of offenders' registry
information.  Both level two and level three sex offenders'
information is now posted on the Internet.  See St. 2013, c. 38,
§§ 7, 9 (requiring Internet posting of level two offenders'
information); St. 2003, c. 140, §§ 5, 11-14 (requiring Internet
posting of level three offenders' information).  No limits are
placed on the secondary dissemination of this information.  See
Moe v. Sex Offender Registry Bd., 467 Mass. 598, 605 (2014)
(Moe).  Furthermore, records of level two and level three
classifications are no longer permitted to be sealed.  See
St. 2010, c. 256, § 129.  The permanence of level two and level
three classification attaches special importance to the accuracy
of the classification in the first instance.

The recent Internet dissemination requirements in
particular have increased the extent of the private interests
affected by classification.  Although in Coe v. Sex Offender

---

[17] But see Doe v. Police Comm'r of Boston, 460 Mass. 342,
342-343 (2011).  Until this year, a warren of city and town
ordinances also prohibited offenders from living near parks,
schools, playgrounds, and other areas commonly used by children.
See Doe v. Lynn, 472 Mass. 521, 533-534 (2015) (determining that
municipal restrictions on offender residency are preempted by
sex offender registry law).

Registry Bd., 442 Mass. 250, 257 n.6 (2004), we determined that Internet publication did not amplify the consequences of classification as a level three sex offender, we have since acknowledged that that conclusion "may no longer be accurate . . . in light of all that we have learned about the operation of the Internet." Moe, supra at 605 n.10. Where previously the time and resource constraints of local police departments set functional limits on the dissemination of registry information, the Internet allows for around-the-clock, instantaneous, and worldwide access to that information -- a virtual sword of Damocles. See id. at 605. Internet dissemination "exposes [offenders], through aggressive public notification of their crimes, to profound humiliation and community-wide ostracism." Doe No. 7083, 472 Mass. at 485, quoting Smith v. Doe, 538 U.S. 84, 115 (2003) (Ginsburg, J., dissenting). Consequences of such public dissemination may include housing and employment discrimination, harassment, and assault.[18] See Moe, supra at 604. Further, should a sex offender later be reclassified to level one such that Internet dissemination is no longer required, "information posted on the Internet is never truly forgotten." Note, The Right to Be

---

[18] These consequences persist despite the sex offender registry law's prohibition on the use of information published about sex offenders to discriminate against or harass them. See G. L. c. 6, §§ 178D, 178N.

Forgotten, 64 Hastings L.J. 257, 259-260 (2012) (describing secondary dissemination of information posted on Internet).

Even level one offenders' registry information is being disclosed more broadly.  Although level one sex offenders' information is not disseminated publicly, it still may be released to the local police departments where they attend institutions of higher learning, see St. 2003, c. 77, §§ 19-20, as well as to a variety of State agencies and the Federal Bureau of Investigation.  See G. L. c. 6, § 178K (2) (a); 803 Code Mass. Regs. § 1.28(3) (2013).  In addition, a level one sex offender's classification level and the city or town in which the offender lives, works, or attends an institution of higher learning may be released to a victim who submitted a written victim impact statement as part of the offender's classification hearing.  See 803 Code Mass. Regs. § 1.28(3).

Although the consequences of classification are now extensive, concerns have been raised as to the accuracy of the risk classifications that SORB must make.  Under the guidelines currently in place, SORB applies twenty-four separate risk factors in order to determine an offender's risk level. 803 Code Mass. Regs. § 1.40(1)-(24).  However, "there is reason for some concern as to whether [SORB's] guidelines continue to reflect accurately the current state of scientific knowledge." Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender

Registry Bd., 470 Mass. 102, 116 (2014) (Doe No. 68549) (noting that most recent studies cited in guidelines were published in 2001). In addition, the Legislature has recently required SORB to update its regulations to "reflect recent [S]upreme [J]udicial [C]ourt or [A]ppeals [C]ourt decisions that have resulted in remands or reversals of [SORB's] final classification decisions." St. 2015, c. 10, § 63.

6. Standard of proof. In light of the new implications of classification at a given risk level, we consider what standard of proof is currently necessary to provide Doe with due process. As we have noted in the past, deprivation of more extensive private interests requires greater procedural protections. See Doe v. Attorney Gen., 426 Mass. at 140, citing Mathews, 424 U.S. at 334-335.

Adopting a "standard of proof is more than an empty semantic exercise" (quotation omitted). Addington v. Texas, 441 U.S. 418, 425 (1979) (Addington). Recognizing that a fact finder will sometimes err despite his or her best efforts, "a standard of proof represents an attempt to instruct the fact finder concerning the degree of confidence our society thinks he [or she] should have in the correctness of [his or her] factual conclusions." In re Winship, 397 U.S. 358, 370 (1970) (Harlan, J., concurring). Although a preponderance standard is generally applied in civil cases, see, e.g., Frizado v. Frizado, 420 Mass.

592, 597 (1995), the clear and convincing standard is applied when "particularly important individual interests or rights are at stake."  Craven v. State Ethics Comm'n, 390 Mass. 191, 200 (1983), quoting Herman & MacLean v. Huddleston, 459 U.S. 375, 389 (1983).

Proof by clear and convincing evidence is "not without teeth."  Matter of G.P., 473 Mass. 112, 120 (2015).  It is a greater burden than proof by a preponderance of the evidence, but less than the proof beyond a reasonable doubt required in criminal cases.  Commonwealth v. Russell, 470 Mass. 464, 471 (2015).  The evidence must be sufficient to convey a "high degree of probability" that the contested proposition is true (quotation omitted).  Callahan v. Westinghouse Broadcasting Co., 372 Mass. 582, 588 n.3 (1977).  Otherwise put, requiring proof by clear and convincing evidence reflects a judicial determination that "[t]he individual should not be asked to share equally with society the risk of error."  Addington, supra at 427.

The United States Supreme Court and this court have applied the clear and convincing standard in a variety of civil contexts.[19]  Both New Jersey and New York, the only two States

---

[19] See, e.g., Santosky v. Kramer, 455 U.S. 745, 758, 769 (1982) (termination of parental rights); Addington v. Texas, 441 U.S. 418, 427, 433 (1979) (civil commitment); Woodby v. Immigration & Naturalization Serv., 385 U.S. 276, 285-286 (1966)

that provide for adversarial risk classification hearings that appear to have considered the standard of proof that such classifications require,[20] require that the appropriateness of

---

(deportation); Chaunt v. United States, 364 U.S. 350, 353 (1960) (denaturalization); MacDonald v. Caruso, 467 Mass. 382, 389 (2014) (termination of abuse prevention order); Birchall, petitioner, 454 Mass. 837, 851-853 (2009) (civil contempt); Adoption of Helen, 429 Mass. 856, 859 (1999) (parental unfitness); Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 870 (1975) (libel against public official or public figure).

[20] The Federal sex offender registry law assigns risk classifications based on the underlying sex offense; it does not allow for individualized assessment of risk of reoffense or current dangerousness. 42 U.S.C. § 16911 (2012). Thirty-five States and the District of Columbia either provide the same public notice about all convicted sex offenders registered within their jurisdictions, or classify an adult sex offender's risk of reoffense solely based on the sex offender's crime of conviction or original sentence. See Ala. Code §§ 15-20a-19, 15-20a-27 (2015); Alaska Stat. §§ 12.63.010, 12.63.020, 12.63.100 (2015); Ariz. Rev. Stat. Ann. §§ 13-3821, 13-3825, 13-3827 (2015); Colo. Rev. Stat. §§ 16-22-102, 16-22-103, 16-22-112 (2015); Conn. Gen. Stat. §§ 54-250, 54-254, 54-256, 54-258 (Supp. VI 2015); Del. Code Ann. tit. 11, §§ 4120-4121 (2014); D.C. Code §§ 22-4001, 22-4002 (2012); Fla. Stat. § 775.21(4)-(5) (Supp. V 2015); Haw. Rev. Stat. § 846E-10 (2015); 730 Ill. Comp. Stat. 150/2, 150/3, 150/3-5 (Supp. VIII 2014) (risk assessment for juveniles only); Ind. Code §§ 11-8-8-4.5, 11-8-8-5, 11-8-8-8 (2015) (risk assessment for juveniles only); Iowa Code § 692A.102 (2015); Kan. Stat. Ann. §§ 22-4902, 22-4904 (2015); Ky. Rev. Stat. Ann. §§ 17.520, 17.554 (2015); La. Rev. Stat. Ann. §§ 15:541, 15:542.1.1, 15:544 (2015); Me. Rev. Stat. tit. 34-A, §§ 11273, 11281-11285 (Supp. IV 2014); Md. Code Ann., Crim. Proc. §§ 11-701, 11-704, 11-707 (Supp. VII 2015); Mich. Comp. Laws § 28.722 (Supp. III 2015); Miss. Code Ann. §§ 45-33-23, 45-33-47 (2015); Mo. Rev. Stat. §§ 589.400.1-589.400.2 (2015); Mont. Code Ann. §§ 46-23-502, 46-23-509 (2015); Neb. Rev. Stat. §§ 29-4003, 29-4005, 29-4007 (2015); Nev. Rev. Stat. §§ 179D.113, 179D.115, 179D.117 (2015); N.H. Rev. Stat. Ann. § 651-B:1 (Supp. VII 2014); N.M. Stat. Ann. §§ 29-11A-3, 29-11A-5.1 (2015); N.C. Gen. Stat. §§ 14-208.6, 14-208.6A (2013); Ohio

Rev. Code Ann. §§ 2950.01(E)-(G) (2014); 42 Pa. Cons. Stat. § 9799.14 (2014); S.C. Code Ann. §§ 23-3-430, 23-3-460 (2014); S.D. Codified Laws §§ 22-24B-2.1, 22-24B-19, 22-24B-19.1, 22-24B-19.2 (2015); Tenn. Code Ann. §§ 40-39-202, 40-39-204, 40-39-212 (2015); Utah Code Ann. §§ 77-41-102(17), 77-41-110 (2015); Va. Code Ann. §§ 9.1-902, 9.1-904, 9.1-911 (2015); W. Va. Code §§ 15-12-2, 15-12-2a, 15-12-5 (2015); Wis. Stat. § 301.45 (Supp. IV 2014); Wyo. Stat. Ann. §§ 7-19-301 to 7-19-304 (2015).

Nine States classify a sex offender's risk of reoffense on a more individualized basis after sentencing, but do not provide for adversarial risk classification hearings.  See Ark. Code Ann. §§ 12-12-913, 12-12-917, 12-12-922 (2015); Cal. Penal Code §§ 290.04, 290.06, 290.46 (Supp. I 2015); Ga. Code Ann. § 42-1-14 (2015); Idaho Code Ann. §§ 18-8303, 18-8314, 18-8316 (2015); N.D. Cent. Code § 12.1-32-15 (12) (2015); Okla. Stat. tit. 57, §§ 582.1, 582.5 (2015); R.I. Gen. Laws § 11-37.1-12 (2015); Tex. Crim. Proc. Code Ann. arts. 62.001, 62.007, 62.403 (Supp. VIII 2014); Wash. Rev. Code §§ 4.24.550, 4.24.5501, 9A.44.128, 72.09.345 (2015).

The remaining three States other than New Jersey, New York, and Massachusetts provide for adversarial risk classification hearings, but we are not aware of court decisions in those States addressing whether due process requires a higher standard of proof than a preponderance.  See Minn. Stat. §§ 243.166, 244.052 (2015); Or. Rev. Stat. §§ 181.800, 181.801, 181.821 (2015); Vt. Stat. Ann. tit. 13, §§ 5401, 5405a, 5411b (Supp. VI 2015).  In Minnesota, a convicted sex "offender has a right to be present and be heard" at an administrative risk classification proceeding, but the standard of proof required for risk classifications is not explicit in the statute.  Minn. Stat. § 244.052(3)(d).  In Oregon, in order to be relieved of the obligation to register, a convicted sex offender must prove by clear and convincing evidence that he or she is statistically unlikely to reoffend and does not pose a threat to public safety.  Or. Rev. Stat. § 181.821(4)(a) (2015).  The Oregon statute does not, however, lay out what standard of proof is required to reclassify a sex offender at a lower risk level while preserving his or her registration obligation.  See Or. Rev. Stat. § 181.821(4)(b).  In Vermont, a convicted sex offender is guaranteed notice and an opportunity to be heard regarding whether he or she poses a "high risk" of reoffense. Vt. Stat. Ann. tit. 13, § 5411b.  That determination is currently made by a preponderance of the evidence.  Vt. Code R. § 12-8-4:4 (2015).

offenders' risk classifications be proved by clear and convincing evidence.  See E.B. v. Verniero, 119 F.3d 1077, 1110-1111 (3d Cir. 1997), cert. denied, 522 U.S. 1109 (1998); Doe v. Pataki, 3 F. Supp. 2d 456, 471 (S.D.N.Y. 1998).  We consider now whether risk classifications in Massachusetts similarly should be held to the higher standard.

7.  Procedural due process.  To determine whether the preponderance standard continues to satisfy due process, "we balance the private interests affected, the risk of erroneous deprivation, the probable value of additional or substitute safeguards, and the governmental interests involved."  Doe No. 972, 428 Mass. at 100, citing Mathews, 424 U.S. at 335.  Consideration of these factors in light of changed circumstances leads us to conclude that due process now requires application of the clear and convincing standard.

a.  Private interests.  As described above, Doe's risk classification level now has dramatic consequences for his liberty and privacy interests that were not present when we decided Doe No. 972.  He faces increasingly stringent affirmative reporting requirements, as well as the possibility of extended incarceration for failing to meet those requirements.  He is also likely to confront stigma and legal restrictions that will make it harder for him to find stable housing or employment, and may even face threats of physical

harm.  The dissemination of his registry information on the Internet only exacerbates these difficulties.

b.  Erroneous deprivation.  The extensive private interests now affected by classification counsel in favor of requiring a higher standard of proof.  Admittedly, neither the risk of erroneous deprivation under the current preponderance standard nor the probable value of imposing a higher standard is altogether clear.  Even if Massachusetts-specific sex offender recidivism research were available, it would be difficult to establish the actual risk of an erroneous deprivation of a registered sex offender's privacy or liberty.[21]  Nevertheless, we are concerned that the current procedural safeguards do not adequately protect against this risk.  Doe's opportunity to present evidence and to examine and cross-examine witnesses at his classification hearing, and the requirement that SORB make particularized, detailed findings concerning his classification

---

[21] At oral argument, counsel for SORB stated that he had "no idea" what percentage of registered sex offenders in Massachusetts actually recidivate.  We recognize that SORB has discretion as to how it fulfils its statutory mandate to "promulgate guidelines for determining the level of risk of reoffense and the degree of dangerousness posed to the public" by convicted sex offenders.  G. L. c. 6, § 178K (1). Nonetheless, it is troubling that little emphasis has apparently been placed by SORB on assessing the accuracy of its classifications.  This is especially true given the enormity of the consequences of such classification decisions.  Contrast Massachusetts Parole Board, Massachusetts Parole Board Three-Year Recidivism Analysis:  2009 (Dec. 2013); Massachusetts Parole Bd., Trends in Revocation Among Massachusetts Parolees (Oct. 2013).

were and continue to be important features of the process that offenders are due. See Doe No. 972, 428 Mass. at 102. The harm to the State from an erroneous underclassification, however, is no longer "nearly equal" to the possible harm to Doe from erroneous overclassification.[22] See id. at 104 n.14.

Other developments since our decision in Doe No. 972 also support raising the standard of proof. The 1996 statute envisioned that SORB's guidelines would augment a set of statutory factors that the Legislature considered relevant to convicted sex offenders' risk of reoffense. See G. L. c. 6, § 178K (1), inserted by St. 1996, c. 239, § 1. Yet these guidelines have not been updated in over fourteen years. See Doe No. 68549, 470 Mass. at 116. Ideally, the factors would

---

[22] Some statistical evidence also appears to support the view that applying a higher standard of proof is appropriate. As of March 9, 2015, SORB classified over three quarters of all sex offenders in Massachusetts as having a moderate or high risk of reoffense. Yet studies have indicated that relatively few sex offenders reoffend. See, e.g., Hanson, Harris, Helmus, & Thornton, High-Risk Offenders May Not Be High Risk Forever, 29 J. Interpersonal Violence 2792, 2796 (2014) (finding 11.9 per cent over-all rate of sexual recidivism, although high-risk offenders reoffend more frequently than low-risk offenders). Other reports have shown that, contrary to popular belief, the rates of recidivism for sex offenders are actually lower than the rates of recidivism for those convicted of other crimes. See, e.g., Council of State Governments, Sex Offender Management Policy in the States, Strengthening Policy & Practice: Final Report 2 (2010). Of course, SORB may accurately determine that specific offenders pose a moderate or high risk of reoffense without those people ever actually reoffending. Even so, the sharp contrast between SORB's classification practices and the studies' conclusions suggests that SORB may be overclassifying offenders.

always reflect current research. Requiring that whatever factors are currently in place be proved with increased rigor, however, will ensure at least that they are applied more accurately on their own terms.[23] Furthermore, little evidence appears to support our concern in Doe No. 972, 428 Mass. at 103, that a heightened standard might lead to erroneous underclassifications.[24] Accordingly, Doe "should not be asked to share equally with society the risk of error." Addington, supra at 427.

    c. Governmental interests. The State has a strong interest in "protect[ing] children and other vulnerable people

---

[23] In Doe No. 972, supra at 102, we acknowledged the possibility that SORB might "apply general factors to the offenders that may not correctly predict their propensity to reoffend," but concluded that other procedural protections than a heightened standard of proof were sufficient to protect against that possibility. The changes to the statutory landscape since our decision in Doe No. 972 persuade us that a heightened standard is additionally necessary.

[24] Recent studies of sex offender recidivism in New York and New Jersey, the two States that already apply the clear and convincing standard to their risk classification proceedings, have noted that sex offenders' rates of committing an additional sex offense are low overall. See R. Tewksbury, W.G. Jennings, & K. Zgoba, Final Report on Sex Offenders: Recidivism and Collateral Consequences 6, 10 (2011); Sandler, Freeman, & Socia, Does a Watched Pot Boil? A Time-Series Analysis of New York State's Sex Offender Registration and Notification Law, 14 Psychol. Pub. Pol'y & L. 284, 297 (2008). Although SORB argues that a cross-State comparison blurs important distinctions in the manner and means by which each State's registry board reaches its classification decisions, these studies provide at least mild support for the proposition that requiring a higher standard of proof does not lead to erroneous underclassifications of the risk posed by registered offenders.

from recidivistic sex offenders." Doe No. 972, 428 Mass. at
103. As the Legislature recognized when it amended the sex
offender registry law in 1999, classification "provide[s] law
enforcement with additional information critical to preventing
sexual victimization."[25] St. 1999, c. 74, § 1. Yet the State
also has an interest in avoiding overclassification, which both
distracts the public's attention from those offenders who pose a
real risk of reoffense, and strains law enforcement resources.
And the State has no interest "in making erroneous
classifications and implementing overbroad registration and
notifications." Doe No. 972, 428 Mass. at 107 (Marshall, J.,
dissenting). Cf. E.B. v. Verniero, supra at 1107-1108; Doe v.
Pataki, supra at 470. Given these interests, a clear and
convincing standard would better "enable police and the
community to focus on those offenders who may pose an actual
threat to young children and others that the statute seeks to
protect." Doe No. 972, 428 Mass. at 104 (Marshall, J.,
dissenting).

d. Balancing. Balancing the Mathews factors, we conclude
that sex offender risk classifications must be established by

---

[25] Some studies, however, have questioned whether
registration and notification requirements have had any effect
on convicted sex offenders' rates of reoffense. See, e.g.,
Agan, Sex Offender Registries:  Fear Without Function?, 54
J. L. & Econ. 207, 208 (2011); Levenson & Cotter, supra at 52.

clear and convincing evidence in order to satisfy due process.[26] Applying the higher standard to Doe's risk classification will provide greater certainty that the burdens placed on him by that classification are warranted.  Replacing the current preponderance standard will better help to advance the goal of ensuring that the Commonwealth's "classification and notification system is both fair and accurate."[27]  E.B. v.

---

[26] Because our decision is a new constitutional rule, the higher standard should be applied retroactively only to classification proceedings pending before SORB, the Superior Court, or the appellate courts on the date of the issuance of the rescript in this case.  See MacCormack v. Boston Edison Co., 423 Mass. 652, 657 (1996).

[27] Although the consequences of Internet dissemination provide a convicted sex offender with a particularly strong interest in avoiding classification as a level two or level three offender, the clear and convincing standard should be applied to all sex offender risk classification levels, including level one.  A level one offender's information may not be disseminated publicly, but it still may be released to a variety of State agencies and the Federal Bureau of Investigation, as well as to a victim who has submitted a written victim impact statement as part of the offender's classification hearing.  See 803 Code Mass. Regs. 1.28(3) (2013).  Level one offenders also are subject to extensive parole conditions.  See Massachusetts Parole Board, Sex Offender Conditions (Nov. 2006).  Furthermore, as noted above, many of the additional burdens placed on registered offenders apply to all levels of offenders.  See G. L. c. 6, §§ 178C-178D (requiring registration of secondary addresses and of names and addresses of institution of higher learning attended by offender); G. L. c. 6, § 178E (h) (requiring re-registration ten days prior to establishing new address); G. L. c. 6, §§ 178F, 178F1/2, 178F3/4 (requiring homeless offenders to re-register every thirty days and to wear GPS device at all times); G. L. c. 6, § 178H (a) (1)-(2) (imposing penalties for failure to register); G. L. c. 265, § 48 (prohibiting ice cream truck vending).  See also Doe, Sex Offender Registry Bd. No. 8725 v.

Verniero, supra at 1107.

A convicted sex offender's risk classification now has far greater consequences than were present when we decided Doe No. 972 over seventeen years ago.  "Classification and registration entail possible harm to a sex offender's earning capacity, damage to his reputation, and, 'most important, . . . the statutory branding of him as a public danger.'"  Poe v. Sex Offender Registry Bd., 456 Mass. 801, 813 (2010), quoting Doe v. Attorney Gen., 426 Mass. at 144.  Internet dissemination of level two and level three sex offenders' registry information magnifies these consequences.  Although the State has a strong interest in protecting the public from recidivistic sex offenders, allowing SORB to make classification determinations with a lesser degree of confidence does not advance that interest.  In short, greater circumspection is needed before offenders' risk classifications are made final.

8.  Internet dissemination.  Doe's argument that the 2013 amendment to the sex offender registry law requiring the Internet publication of level two offenders' registry information, St. 2013, c. 38, §§ 7, 9, was not retroactive as

Sex Offender Registry Bd., 450 Mass. 780, 793 (2008) (recognizing that rights affected by level one classification are "substantial").  Cf. E.B. v. Verniero, 119 F.3d 1077, 1110-1111 (3d Cir. 1997), cert. denied, 522 U.S. 1109 (1998) (applying clear and convincing standard to classification at every risk level); Doe v. Pataki, 3 F. Supp. 2d 456, 471 (S.D.N.Y. 1998) (same).

applied to him is without merit.  Although we determined in Moe
that that amendment was not retroactive as applied to
individuals finally classified as level two sex offenders on or
before July 12, 2013, the effective date of the amendment, we
stated explicitly that "[n]othing in this order affects the
ability of SORB to publish on the Internet the registry
information of any individual who was given a final
classification as a level two sex offender after July 12, 2013."
Moe, supra at 616.  Doe's final classification as a level two
offender did not occur until October 23, 2013, so Internet
dissemination of his information is permissible.

Nevertheless, because Doe's classification as a level two
offender is vacated, we remand to the Superior Court for entry
of an order to SORB to cease disseminating Doe's registry
information on the Internet; unless and until he is finally
classified under the clear and convincing standard at a risk
level that requires such dissemination, to do otherwise would
violate Doe's due process rights.  Compare Doe No. 7083, 472
Mass. at 489-490 (vacating final risk classification that
violated procedural due process, and treating as preliminary
SORB's attempted classification).

9. Conclusion.  The decision of the Superior Court judge
affirming SORB's classification of Doe as a level two sex
offender is vacated and set aside.  We remand the matter to the

Superior Court for entry of an order requiring SORB to conduct an evidentiary hearing consistent with this decision, and to cease disseminating Doe's registry information on the Internet during the pendency of such proceedings.

<u>So ordered</u>.