NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-218

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 523735

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment affirming his classification by the Sex Offender Registry Board (board) as a level three sex offender.  On appeal, Doe claims that the hearing examiner erred by relying on hearsay evidence that lacked indicia of reliability, misapplying certain high-risk factors, and in requiring Internet dissemination of Doe's personal information.  We affirm.

Underlying offenses.  We summarize the factual background of Doe's underlying offenses as set forth in the hearing examiner's decision.  Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 606 (2011) (Doe No. 10800).

In 2014, Doe's twenty-five year old daughter (victim 1) and fourteen year old former stepdaughter (victim 2) reported to the police department that over the span of several years Doe had sexually assaulted them multiple times.

In her statement to police, victim 1 explained that in 2004, when she was sixteen years old, she moved from Portugal to the United States to live with Doe, her stepmother, and her two stepsisters (victim 2 and her sister). Victim 1 lived with Doe from August to November 2004. During this time, Doe touched victim 1's breasts and buttocks, kissed her on the mouth, and repeatedly came into her room when she was undressed and got into bed with her. Doe rubbed his penis over her clothing while leaning against her buttocks. Victim 1 told Doe to stop and she also reported the sexual abuse to her stepmother. The stepmother confronted Doe and the sexual abuse stopped for a period of time. Victim 1 reported to her stepmother that Doe had resumed his sexual abuse and the stepmother once again confronted Doe. Shortly after the second confrontation, Doe took victim 1 by the arm, threw her on a couch, and told her that if she told anyone else about the sexual assaults, he would kill her.

Three weeks after he threatened her, Doe told victim 1 that his religion required that she undergo a ritual of protection

2

which required him to bathe her in a tub.  While bathing victim 1, Doe touched her breasts and digitally penetrated her vagina. In November 2004, victim 1 returned to Portugal.

In 2007, victim 1 returned to the United States and Doe apologized to her for his past sexual abuse and told her that it would never happen again.  Victim 1 moved back into Doe's home. Doe, however, did not keep his promise.  Soon thereafter, Doe told victim 1 to refer to him by his first name and not "Dad" and to think of him as her boyfriend.  Then, Doe began entering victim 1's bedroom, laying his head on her chest, and touching her breasts and buttocks.  In January of 2008, Doe told victim 1 that he needed to conduct another religious ritual.  Doe removed her clothing and then licked her face, neck, and chest.  In a later conversation with victim 1, Doe said that he did not have "fatherly feelings" for her and saw her as a woman and could not control himself around her.

Doe's former stepdaughter victim 2 also reported to police that Doe sexually assaulted her between 2008 and 2011, when she was between the ages of eight and eleven, and threatened to hurt her family if she reported the abuse.  Doe would remove victim 2's clothing, get on top of her, touch her legs and thighs, and often massaged the outside of her vagina with two or three fingers and his penis.  Doe also attempted to kiss her neck and

lips.  Doe also made victim 2 touch his penis on multiple occasions.

In 2015, a jury convicted Doe of one count of rape and one count of incest based on his actions against victim 1.[1]  As to the sexual assaults of victim 2, Doe was indicted in Superior Court on eight counts of indecent assault and battery on a child under the age of fourteen, but the Commonwealth later entered a nolle prosequi on all charges.

Procedural history.  On or around January 31, 2018, the board notified Doe that it had preliminarily designated him as a level three sex offender, which he challenged by requesting a de novo hearing.  On February 11, 2019, a de novo hearing was held, and the board issued a decision finding that Doe posed a high risk to reoffend and a high degree of dangerousness and was required to register as a level three sex offender.  After Doe's motion to vacate the final decision and have a new classification hearing was allowed, another de novo hearing was held on June 8, 2021.  The board issued a decision classifying Doe as a level three sex offender.  The hearing examiner found Doe's behavior was repetitive and compulsive (factor 2) because

---

[1] Doe was sentenced to five to seven years in State prison for the rape of victim 1, and on the incest conviction, Doe received a ten-year probation sentence to be served from and after his release from incarceration.

4

he was confronted twice about his sexual abuse of victim 1 but continued to reoffend against her, and he sexually assaulted victim 2 several times.  The hearing examiner gave factor 2 increased weight because Doe continued to sexually offend despite being confronted by his wife on two occasions.  The hearing examiner also found that factor 3 applied because victim 2 was under the age of thirteen and prepubescent when Doe sexually assaulted her.  Doe sought judicial review of the board's classification determination in Superior Court.  The Superior judge upheld the level three classification and this appeal followed.

Discussion.  1.  Standard of review.  When a hearing examiner classifies an offender as a level three sex offender, the decision must be supported by clear and convincing evidence that the offender presents "a high risk of reoffense, a high degree of dangerousness, and a public safety interest is served by active dissemination of the offender's registry information -- in a manner that is particularized and detailed to the offender."  Doe, Sex Offender Registry Bd. No. 6729 v. Sex Offender Registry Bd., 490 Mass. 759, 768 (2022) (Doe No. 6729).  See Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297, 314 (2015) (Doe No. 380316).  A reviewing court may set aside or modify a decision of the board

5

if it determines, among other things, "that the decision is in excess of [the board's] statutory authority or jurisdiction, violates constitutional provisions, is based on an error of law, or is not supported by substantial evidence." Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass 643, 649 (2019). When evaluating the decision by the board, the court will "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 787 (2006), quoting G. L. c. 30A, § 14 (7). Doe therefore bears the "heavy burden of establishing that the [board's] decision was incorrect" (citation omitted). Doe, Sex Offender Registry Bd. No. 3177 v. Sex Offender Registry Bd., 486 Mass. 749, 757 (2021) (Doe No. 3177). We review a judge's consideration of an agency decision de novo. See Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 101 Mass. App. Ct. 797, 801 (2022).

2. <u>Classification determination</u>. Doe requests that we vacate the board's decision classifying him as a level three sex offender and remand for a new hearing. He argues that the hearing examiner erroneously relied on inadmissible hearsay evidence consisting of victim 2's statements to the police

6

contained within a police report to support the application of factor 2 (repetitive and compulsive behavior) and factor 3 (prepubescent victim). Without victim 2's hearsay statements to officers describing the sexual assaults by Doe, Doe claims that the level three designation was not supported by substantial evidence.

One of the high-risk factors that the board may consider when classifying a sex offender is behavior that is described as "repetitive and compulsive," otherwise referred to as factor 2. See 803 Code Mass. Regs. § 1.33(2) (2016). The board applies factor 2

> "at its threshold weight any time an offender 'engages in two or more separate episodes of sexual misconduct' where there is 'time or opportunity, between the episodes, for the offender to reflect on the wrongfulness of his conduct.' [The board] may 'give increased weight to offenders who have been discovered and confronted (by someone other than the victim) or investigated by an authority for sexual misconduct and, nonetheless, commit a subsequent act of sexual misconduct.'"

Doe, Sex Offender Registry Bd. No. 22188 v. Sex Offender Registry Bd., 96 Mass. App. Ct. 738, 742 (2019), S.C., 101 Mass. App. Ct. 797 (2022), quoting 803 Code Mass. Regs. § 1.33(2).[2]

---

[2] Although Doe argues in his brief that the application of factor 2 when an offender is confronted by a family member is unconstitutional, he explicitly waived this claim during oral argument and acknowledged that such a challenge must be brought in a separate declaratory judgment action. See Doe No. 10800, 459 Mass. at 630 ("A challenge to the constitutionality of a general regulation cannot be resolved by requesting declaratory

7

The board's regulations allow the hearing examiner to apply "increased weight" to factor 2 if a sex offender has been discovered and confronted by someone other than the victim, and then continues to commit a subsequent act of sexual misconduct.[3] Doe argues that the hearing examiner incorrectly gave factor 2 increased weight because he improperly considered unreliable hearsay evidence. Specifically, Doe points to evidence that, in the course of disclosing Doe's sexual abuse, victim 2 told victim 1 that she had lied about Doe in the past and said that Doe did not sexually abuse her. Doe claims that the hearing examiner abused his discretion in finding that victim 2's statements were reliable because she had admitted to lying in the past about Doe. We are not persuaded.

A hearing examiner "is not bound by the rules of evidence applicable to court proceedings," and when conducting a sex offender classification hearing, "hearsay evidence may be admissible if it bears sufficient indicia of reliability" (citation omitted). Doe, Sex Offender Registry Bd. No. 523391

---

relief in an appeal from an administrative agency decision because judicial review is confined to the administrative record, . . . which has been made based on the presumption that the classification scheme is constitutional").

[3] In Doe No. 6729, 490 Mass. at 766, the Supreme Judicial Court recently upheld the constitutionality of the portion of factor 2 regarding compulsive behavior that was applied in this case.

8

v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019). Factors to consider when determining if hearsay should be deemed reliable include "the general plausibility and consistency of the victim's or witness's story, the circumstances under which it is related, the degree of detail, the motives of the narrator, the presence or absence corroboration and the like" (citation omitted). Id. On the other hand, factors that should be considered when determining that a hearsay statement is unreliable include "failure to identify the source of information, a lack of detail, and a lack of information about the circumstances in which the statements were made." Id. at 89-90. When there is an allegation of sexual misconduct that did not result in a conviction, the hearing examiner may consider the underlying facts if those facts are proven by a preponderance of the evidence. See Doe No. 3177, 486 Mass. at 754-755.

Here, the hearing examiner did not abuse his discretion when he found victim 2's hearsay statements contained in the police report to be reliable and sufficiently detailed to prove by a preponderance of the evidence that Doe sexually assaulted her. Victim 2 provided the police with a thorough account of the sexual assaults committed by Doe, including the specific addresses where they occurred and how old she was at the time of

9

each offense.  In addition, victim 2's descriptions of the specific manners in which Doe sexually offended were similar to, and thus were corroborated by, the sexual assaults Doe committed on victim 1 and of which Doe was convicted.

The fact that there may have been slight inconsistencies in statements made by victim 2 does not alter our conclusion that there was no abuse of discretion in determining that the hearsay was reliable.  The hearing examiner was in the best position to resolve factual disputes.  See Doe No. 10800, 459 Mass. at 633 ("It is the province of the board, not this court, to weight the credibility of the witnesses and to resolve any factual disputes").  Moreover, the hearing examiner was not required to disregard victim 2's statements to the police solely because the victim had stated in the past that she lied when she denied having been sexually abused by Doe.  This is especially true where Doe threatened to harm victim 2's family if she disclosed that he was sexually abusing her.  The hearing examiner acknowledged the evidence of victim 2's "lie" and considered it in the context of Doe threatening to harm the prepubescent victim's family if she disclosed his sexual abuse.  The hearing examiner then weighed that evidence against the detailed nature of the allegations and the fact that victim 1's account of Doe's sexual abuse was similar to victim 2's.  There was no abuse of

10

discretion in the admittance of victim 2's hearsay statements as they bore sufficient indicia of reliability to constitute admissible evidence.

Doe also claims that factor 2 should not have been applied because the record did not support the hearing examiner's conclusion that Doe's behavior was compulsive. We disagree. The evidence about compulsive behavior came from Doe himself, when he told victim 1 that he "couldn't help himself around her," and from Doe's repeated sexual assaults despite promising victim 1 that it would never happen again. Doe next claims that the hearing examiner should not have given increased weight to factor 2 because the record contained inconsistencies whether victim 1's stepmother confronted Doe about his sexual offending. Here, the hearing examiner properly found that Doe had been confronted on two occasions about his sexual abuse of victim 1 and later reoffended against both victim 1 and victim 2. There was no error in the hearing examiner giving appropriate weight to victim 1's detailed description to the police of Doe's repeated sexual abuse as well as her efforts to stop the abuse by reporting Doe's behavior to her stepmother (Doe's wife, and the mother of victim 2).

We are also unpersuaded by Doe's other arguments that the application of factor 2 in this context was error. Doe argues

11

that the hearing examiner erred in applying factor 2 because there was no empirical evidence to support a correlation of an increased risk to reoffend when a perpetrator is confronted by a family member (as opposed to a member of law enforcement), and subsequently commits another act of sexual misconduct. Doe relies heavily on a letter submitted as an exhibit written by Dr. Karl Hanson, a leading researcher in the field of sex offender recidivism, which in relevant part stated "[t]he available research has not examined forms of discovery and confrontation other than that of the police and criminal justice system. It is unknown whether reoffending after confrontation by family members, for example, would be a valid indicator of increased risk."

As described in note 2, supra, Doe agrees that any constitutional challenge based on Hanson's letter or opinion must be brought in a separate declaratory judgment action. We therefore address this claim only as part of our determination whether "substantial evidence" supported the application of factor 2.

Despite Doe's argument to the contrary, our review is not to determine if the record contained empirical evidence of a correlation between the application of a factor and the risk to reoffend. Simply stated, a letter, even by a recognized expert

12

in the field, stating that "[i]t is unknown" if confrontation by a family member is a valid indicator of an increased risk, is insufficient to mount a challenge that the application of factor 2 was incorrect. Instead, our focus is to determine whether "substantial evidence" supported the decision by the hearing examiner. See Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 762 (2006). Here, as discussed above, factor 2 was supported by the specific facts introduced at the hearing, and the classification of Doe was supported by substantial evidence. Doe has failed to persuade us that the application of factor 2 was otherwise incorrect.[4]

3. Specificity in the board's decision and requirement of Internet publication. Doe also contends that the hearing examiner's decision was arbitrary and capricious because it failed to make specific and individualized findings both generally and regarding the necessity for Internet dissemination of his personal information. See G. L. c. 30, § 14 (7). We

---

[4] Finally, Doe also argues that, were we to find that factor 2 should not have applied, the rest of the factors cannot support a level three classification. Because we hold that the application of factor 2 was supported by substantial evidence, we need not address whether the rest of the factors found to be applicable by the board could alone support a level three classification. We offer no opinion whether Doe might be successful in a separate declaratory action raising a constitutional challenge to factor 2, which involves an entirely different framework than we apply here.

13

first address Doe's argument regarding the level of detail in the hearing examiner's decision generally.  We agree with Doe that the hearing examiner was required to make particularized and detailed findings concerning Doe's classification.  See Doe No. 380316, 473 Mass. at 312.  Doe argues that the hearing examiner's decision was essentially the mechanical application of a checklist and failed to provide a reasoned analysis justifying a level three classification.

The hearing examiner's decision, however, shows a specific and thoughtful consideration of the relevant factors, including a number of mitigating and aggravating risk factors that applied to Doe.  The hearing examiner properly weighed the impact of Doe's sex offenses and his current circumstances in determining his risk of sexual reoffense and degree of dangerousness.  Each risk-elevating and risk-mitigating factor was discussed both generally and as applied to Doe.  The hearing examiner then discussed Doe's risk of reoffense and his degree of dangerousness.

As to the public interest served by Internet publication of Doe's sex offender registration information, the hearing examiner considered, as he must, whether Internet publication serves a legitimate public safety interest.  See Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd.,

14

483 Mass. 131, 133 (2019).  The hearing examiner properly considered the severity and extent of harm done by Doe, and, in part based on his past victim pool, the level of danger Doe would present to the public if he reoffended.  The hearing examiner also appropriately considered Doe's past offenses and the victim pool before concluding that Internet dissemination was appropriate.  The record amply supported the hearing examiner's finding that Internet dissemination was warranted where Doe repeatedly sexually assaulted his daughter and stepdaughter over a span of several years in the manners described above, despite twice being confronted about his sex offending behaviors.  The hearing examiner concluded that Doe's likely future victim would be "a female family member or live-in relative," but noted that, with Doe having a new wife who also denied Doe's prior sexual misconduct, publication was warranted.  The hearing examiner's calculation of risk and the need for Internet dissemination was tailored to the particular risks posed by Doe, and the realistic conclusion -- that Internet publication very well may prevent diverse intrafamilial girls such as the victims here from becoming victims of sex offenses -- was plainly "based on a sound exercise of informed discretion

15

rather than the mechanical application of a checklist or some other reflex."  Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 651 (2012).

Judgment affirmed.

By the Court (Vuono, Rubin & Walsh, JJ.[5]),

*Paul Little*

Clerk

Entered:  August 23, 2024.

---

[5] The panelists are listed in order of seniority.