Davis, Brian A., J.
Introduction
This is an action, filed pursuant to G.L.c. 30A, §14, G.L.c. 6, §178M, and G.L.c. 231A, §1, in which petitioner Daniel Noe, Sex Offender Registry Board Number 5340 (“Petitioner”), a registered “Level 3" sex offender, challenges a May 2014 decision by respondent Sex Offender Registry Board (the “Board”) denying his statutorily-authorized request for reclassification to a lower sex offender level. The Board’s decision came after a hearing at which Petitioner represented himself because the Board’s regulations do not provide for the appointment of legal counsel for indigent sex offenders who seek reclassification. In its decision, the Board concluded that Petitioner had not presented sufficient evidence to establish, by a preponderance of the evidence, that there had been a change in his circumstances which warranted a reduction in his level classification.
Petitioner commenced this action in June 2014. After several procedural delays, the case eventually came before the Court on Petitioner’s renewed motion for judgment on the pleadings filed pursuant to. Mass.R.Civ.P. 12(c) (Docket No. 24.0). See Superior Court Standing Order 1-96. It is Petitioner’s renewed motion with which this decision and order is concerned. Petitioner argues, inter alia, that the Board’s decision violates his constitutional rights and is otherwise not in accordance with law because the Board required him to bear the burden of proof at his reclassification hearing, and because he was denied the benefit of legal counsel at that hearing. The Board argues to the contraiy. It also has requested that the Court remand Petitioner’s case to the Board for a rehearing in light of the Supreme Judicial Court’s recent decision in Doe, Sex Offender Registry Bd. No. 380316 v. Sex Offender Registry Bd., 473 Mass. 297 (2015) (“Doe No. 380316"), which the Board interprets as imposing on Petitioner the burden of establishing, by clear and convincing evidence, that his circumstances warrant a reduction in his sex offender level classification.
The Court conducted multiple hearings in this matter, most recently on November 22, 2016. Having now considered all of the parties’ written submissions and the oral arguments of counsel, Petitioner’s renewed motion for judgment on the pleadings is ALLOWED for the reasons, and to the extent, discussed below.
Factual, Legal, and Procedural Background[2]
This case and the Board regulations in question have a lengthy factual, legal, and procedural background that the Court does its best to succinctly summarize as follows.
I. The Massachusetts Sex Offender Registry Law
The Massachusetts Legislature first enacted a sex offender registry law in 1996. See St. 1996, c. 239. Following a series of judicial decisions identifying certain “infirmities” in the original statute, the Legislature enacted the present, significantly revised version of the law, which appears at G.L.c. 6, §§178C-178Q (the “Sex Offender Registry Law” or the “Registry Law”), in 1999. Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 755 (2006). As described by the Supreme Judicial Court (“SJC”), the Massachusetts Sex Offender Registry Law, as currently written,
provides that a person convicted of any of the enumerated sex offenses on or after August 1,1981, or released on or after August 1, 1981, from confinement, parole, or probation supervision following a conviction of one of these offenses, is a “[s]ex offender”. . .
*128 provides for the appointment by the Governor of a seven-member sex offender registry board. A sex offender who lives or works in the Commonwealth must register with the board by mail, listing his name, home address, and (if applicable) work address, or his intended home and work addresses . . . [and]
provides for postregistration hearings and mandates the order of priority in which offenders are to be reviewed. The board is to promulgate guidelines for classifying an offender’s level of dangerousness and risk of reoffense and apply those guidelines to assess the risk level of particular offenders ... Once an offender receives notice from the board of its initial recommended classification, he can request an evidentiary hearing to determine his future duty to register and his final classification. The board then assigns a final risk classification level: level one (low); level two (moderate); or level three (high). Offenders may seek judicial review pursuant to G.L.c. 30A, §14, of the board’s final classification and registration requirements . . .
Id. at 756 (citations omitted).
While the origins of the Sex Offender Registry Law datebackto 1996, the provisions ofthe law concerning reclassification hearings are of a much more recent vintage. Prior to 2013, the Registry Law contained no procedural mechanism for the Board to modify a previously-classified sex offender’s level classification upward or downward based upon updated information. In 2013, the Legislature further amended Section 178L of the Registry Law (see St. 2013, c. 38) so as to authorize the Board, “on its own initiative or upon written request by a police department or district attorney,” to “reclassify any registered and finally classified sex offender in the event that new information, which is relevant to a determination of a risk of re-offense or degree of dangerousness, is received.” G.L.c. 6, §178L(3). The Registry Law, as amended, also empowers the Board to “promulgate regulations defining such new information and establishing the procedures relative to a reclassification hearing held for this purpose,” provided, however, that certain procedural safeguards are followed, including that,
(i) the hearing is conducted according to the standard rules of adjudicatory procedure or other rules which the board may promulgate, (ii) the hearing is conducted in a reasonable time, and (in.) the sex offender is provided prompt notice of the hearing, which includes: the new information that led the board to seek reclassification of the offender, the offender’s right to challenge the reclassification, the offender’s right to submit to the board documentary evidence relative to his risk of reoffense and the degree of dangerousness posed to the public, the offender’s right to retain counsel for the hearing, and the offender’s right to have counsel appointed
if the offender is indigent, as determined by the board using the standards in chapter 21 ID.

Id.

Significantly, Section 178L(3), as currently written, does not distinguish between reclassification proceedings that may be conducted for the purpose of increasing a sex offender’s classification level, and reclassification proceedings that may be conducted for the purpose of decreasing a sex offender’s classification level. Id. Nor does Section 178L prescribe which parly shall bear the burden of proof at any reclassification hearing the Board may hold. Id.
II. The Board’s Reclassification Regulations and Procedures
The Board responded to the 2013 legislative amendments to Section 178L by adopting regulations which establish two different procedural paths for sex offender reclassification hearings. The first path, titled “Board Seeks Reclassification of Sex Offender,” applies to cases in which the Board, “on its own initiative, seek[s] to reclassify any registered and finally classified sex offender upon Receipt of any information that indicates the offender may present an increased risk to reoffend or degree of dangerousness.” 803 Code Mass. Regs. §1.37C(10) (2013) (the “First Path Regulations”).[3] Reclassification hearings conducted pursuant to the First Path Regulations incorporate all of the procedural protections mandated by amended Section 178L, including the right to notice, the right to offer evidence relative to his or her risk of re-offense and degree of dangerousness posed to the public, the right to be represented by counsel at the reclassification hearing, and the right to have counsel appointed if indigent. Id., §1.37C(10)(c) (incoiporating, by reference, all of the procedures and protections pertaining to initial classification hearings). The First Path Regulations also provide that the Board bears the burden of proof at any reclassification hearing conducted pursuant to those regulations. Id., §1.10(1) (incorporated, by reference, in the Board’s First Path Regulations at §1.37C(10)(c)). A reclassification decision issued pursuant to the First Path Regulations is deemed to be a “final decision” of the Board and is subject to judicial review in accordance with the provisions of G.L.c. 30A, §14. 803 Code Mass. Regs. §1.24 (incorporated, by reference, in the Board’s current First Path Regulations at §1.32(4)).
The second path, titled “Sex Offender’s Request for Reclassification,” applies to cases in which a registered sex offender submits his or her own request for reclassification to the Board. 803 Code Mass. Regs. §1.37C(l)-(9) (2013) (the “Second Path Regulations”).[4] The Board’s Second Path Regulations permit a registered Level 2 or Level 3 sex offender who has not been convicted of a new sex offense to “file a written motion with the Board to re-examine his or her classification level” no sooner than “three years after the date of his [or her] final classification . . .” Id., §1.37C(2). Any *129 request for reclassification submitted by a registered sex offender is subject to a mandatory hearing before “a panel of hearing examiners or a single hearing examiner” appointed by the Board’s Chair. Id., § 1.37C(5). Reclassification hearings conducted pursuant to Second Path Regulations, however, do not incorporate all of the procedural protections mandated by amended Section 178L. For example, while the Board’s Second Path Regulations permit a sex offender to be “represented at the [reclassification] hearing by privately retained counsel or an authorized representative,” they do not provide for the appointment of counsel for indigent sex offenders. Id., §1.37C(5)(d). Of equal importance for purposes of this proceeding, the Board’s Second Path Regulations place on the sex offender the burden of proving at the reclassification hearing that “his or her risk of reoffense and the degree of dangerousness he or she poses to the public has decreased since his or her final classification.”[5] Id., §1.37C(2)(c). And as with the Board’s First Path Regulations, any reclassification decision issued pursuant to the Second Path Regulations is deemed to be a “final decision” of the Board and is subject to judicial review in accordance with the provisions of G.L.c. 30A, §14. Id., §1.37C(6).
The Board explains and justifies its bifurcated regulatory scheme for sex offender reclassification proceedings on the ground that “the Legislature, in creating the Sex Offender Registry Law . . . did not provide for sex offender initiated reclassifications ...” Defendant Sex Offender Registry Board’s Opposition to Plaintiffs Motion for Judgment on the Pleadings and Action for Declaratory Judgment, dated July 27, 2016 (“Board Memo.”), at 7. According to the Board, reclassification proceedings conducted in response to a registered sex offender’s request for reclassification have no statutory basis and are permitted by the Board, in its administrative discretion, solely in recognition of the fact that “the risk to reoffend and degree of dangerousness posed by offenders may decrease over time . . .” Id. at 8. Thus, it is the Board’s position that its Second Path Regulations were not promulgated pursuant to Section 178L(3), and that they need not incorporate the procedural protections for offenders mandated by that statute, including the “statutory right to counsel while seeking reclassification ...” Id. at 7.
III. Petitioner’s Unsuccessful Request for Reclassification
Petitioner is a 55-year-old man who was convicted of “open and gross lewdness and lascivious behavior” (see G.L.c. 272, §16) on five occasions between 1990 and 2004. Administrative Record (“AR”) at 117. All of Petitioner’s convictions involved instances in which he exposed himself and masturbated in public. Id. at 118-22. None of Petitioner’s convictions arose from any sexually violent offense as defined in G.L.c. 6, §178C, or involved any actual physical contact with his victims. Id.
In January 2007, the Board, citing Petitioner’s convictions for “open and gross lewdness and lascivious behavior,” issued a decision classifying Petitioner as a “Level 3" sex offender. Id. at 109-32. Level 3 represents the highest classification level possible under the Sex Offender Registry Law. G.L.c. 6, §178K(2)(c). In theory, it is reserved for those persons whose ’’risk of reoffense is high and the degree of dangerousness posed to the public is such that a substantial public safety interest is served by active dissemination" of the offender’s identity and offense history to the public. Id.
Following his classification as a sex offender, Petitioner lived in the community without any sexual re-offense for over six years. Decision on Petitioner’s Motion for Reclassification, dated May 28, 2014 (“Reclassification Decision”), at 12.[6] Like many other sex offenders, however, Petitioner found over time that his Level 3 classification made it “extremely difficult to put [his] life back together.” AR at 107. Believing that his clean sexual offense record over the preceding six plus years had demonstrated a low risk of re-offense and a lack of dangerousness, Petitioner submitted an unadorned, one-paragraph request to the Board in Jan-uaiy 2013, requesting a “reduction” in his sex offender classification level.[7] Id. Petitioner, who is indigent, prepared and submitted his request without the assistance of counsel. No supporting documentation or other evidence accompanied the request. Id.
At the time Petitioner submitted his reduction or reclassification request, the Board had notyet adopted its Second Path Regulations. Approximately six months after those regulations became effective, the Board notified Petitioner that it would conduct a hearing on his request, in accordance with the Second Path Regulations, in February 2014. Id. at 139-44. The Board’s notice of hearing informed Petitioner that “[t]he burden [will be] on you to show that your risk to reoffend and your degree of dangerousness has decreased since your previous classification.” Id. at 140. The Board’s notice of hearing also informed Petitioner that he could have legal counsel represent him at the hearing “at his own expense” if he wished to do so, but cautioned that “there [would] not be counsel appointed” for him. Id. at 142 (emphasis in original).
A panel of three hearing examiners heard Petitioner’s request for reclassification on February 24, 2014. Reclassification Decision at 3. Petitioner appeared pro se. Id. He called no independent witnesses, offered no exhibits, and filed no motions on his own behalf. Id. at 2. The Board, in turn, offered only a copy of Petitioner’s request for reclassification, an updated Board of Probation record (which confirmed that Petitioner had not been accused or convicted of any sexual offenses since his original classification in 2007), and some correspondence to *130 the Boston Police notifying them that Petitioner was seeking reclassification. Id.
The Board issued its decision on Petitioner’s request for reclassification in May 2014. See Reclassification Decision. The Board acknowledged that, “[s]ince his January 2007 Level 3 decision, [Petitioner] has remained offense free to the community for approximately seven years” and “has maintained sobriety for approximately five and one half years.” Id. at 12. Two of the three panelists nonetheless concluded, “by a preponderance of the evidence,” that Petitioner “remains a high risk of reoffense and a high degree of dangerousness.” Id. at 14. As a result, the Board denied Petitioner’s request for reclassification and ordered him to “continue to register as a Level 3 sex offender in accordance with G.L.c. 6, §178K(2)(c).” Id.
IV. This Action
Petitioner commenced this Superior Court action seeking judicial review of the Board’s Reclassification Decision pursuant to G.L.c. 30A, §14, on June 27, 2014. His accompanying request for appointment of counsel was allowed by the Court. The subsequent assembly of the administrative record went slowly. Petitioner eventually filed his initial motion for judgment on the pleadings (Docket No. 11.0) in October 2015. In support of his motion, Petitioner argued that the Board’s denial of his request for reclassification to a lower sex offender level was arbitrary and capricious, an abuse of discretion, and unsupported by substantial evidence. See G.L.c. 30A, §14(7)(g), (e). The Board submitted a timely opposition, and the Court conducted a hearing on Petitioner’s motion in November 2015.
At the motion hearing, counsel for Petitioner orally requested leave to raise additional arguments challenging the validity and constitutionality of certain aspects of the Board’s reclassification procedures, specifically the requirement that the sex offender bear the burden of proving that “his or her risk of reoffense and the degree of dangerousness he or she poses to the public has decreased since his or her classification,” and the Board’s failure to provide counsel for indigent sex offenders seeking reclassification. With the Court’s permission, Petitioner then filed a motion for leave to amend his complaint (Docket No. 17.0) to include those arguments, which the Board, in turn, opposed.
While Petitioner was preparing his motion to amend, the SJC issued its decision in Doe 380316, supra. In Doe 380316, the SJC reexamined the standard of proof that the Board must satisfy in classifying a particular sex offender for purposes of the Commonwealth’s Sex Offender Registry Law. The SJC reviewed various developments in the statutory law and in social science since it decided in 1998 that sex offender classification proceedings should be governed by a “preponderance of the evidence” standard. See Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd., 428 Mass. 90 (1998) (“Doe 972"). It concluded that the preponderance of the evidence standard no longer adequately protects a sex offender’s rights, including an offender’s constitutional right to due process. Doe 380316, 473 Mass. at 304-11. Accordingly, the SJC held that, henceforth, “sex offender risk classifications must be established by clear and convincing evidence in order to satisfy due process.” Id. at 314. The SJC further held that, because its ruling was constitutionally based, it would apply “retroactively only to classification proceedings pending before SORB, the Superior Court, or the appellate courts” as of the date of the Court’s decision (i.e., December 11, 2015). Id. at 314 n.26.
The Board responded to the SJC’s decision in Doe 380316 by filing an emergency motion to dismiss and remand this case to the Board for a rehearing (Docket No. 14.0), at which Petitioner would be given another opportunity to demonstrate — this time by “clear and convincing evidence” — that his risk of re-offense and the degree of dangerousness he poses to the public has decreased since his original classification. Petitioner opposed the Board’s emergency motion to dismiss and remand, arguing, in part, that the SJC’s decision in Doe 380316 makes no mention of reclassification proceedings, let alone the standard of proof applicable to such proceedings.
This Court agreed with Petitioner’s arguments in a memorandum and order issued in May 2016. See Memorandum and Order, dated May 12, 2016 (Docket No. 18.0). In explaining its decision, the Court stated that, “[g]iven the important issues that this matter otherwise presents, [it] declines to remand the case to the Board for further reclassification proceedings at this time.” Id. at 3. The Court simultaneously allowed Petitioner’s motion to amend his complaint to raise, by way of a new claim for declaratory relief under G.L.c. 231A, §1, the constitutional issues of whether the Board can require sex offenders to bear the burden of proof in reclassification proceedings, and whether the Board is required to provide counsel for indigent sex offenders who seek reclassification.
Petitioner filed his Amended Complaint in late May 2016, and his renewed motion for judgment on the pleadings (Docket No. 24.0) in early August 2016. The Board answered Petitioner’s Amended Complaint on June 20, 2016 (Docket No. 23.0), and its opposition to Petitioner’s renewed motion is contained in Petitioner’s Superior Court Rule 9A motion package. Neither side has requested leave to conduct any additional discovery or submit any additional evidence addressing Petitioner’s newly-added claim for declaratory relief.
Discussion
I. The Applicable Standards of Review
Two separate standards of review apply in this case. In assessing the Board’s decision to deny Petitioner’s request for reclassification and confirm his continuing *131 status as a Level 3 sex offender, the court is empowered to reverse or modify the Board’s decision “only if [it] determine[s] that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law.” Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011) (“Doe 10800") (quoting G.L.c. 30A, §14(7)(e), (g)). In maMng such an assessment, the court must “give due weight to the experience, technical competence, and specialized knowledge of the [board], as well as to the discretionary authority conferred upon it.” Id. at 632-33 (internal quotation marks omitted, alteration in original). This deferential approach does not require or imply an abdication of judicial oversight, however, particularly when constitutional rights are at risk.[8] “It is for the courts, not administrative agencies, to decide the constitutionality of statutes [or regulations].” Id. at 628-29 (internal quotation marks omitted, alteration in original).
Petitioner’s claim seeking ajudicial declaration that the Board’s reclassification procedures violate due process implicates a different standard of review. The SJC previously has held that “[s]ex offenders have a constitutionally protected liberty and privacy interest in avoiding registration and public dissemination of registration information.” Doe 972, 428 Mass, at 100. Where, as here, Petitioner has “particularly important individual interests or rights ... at stake,” Massachusetts courts apply the test set forth by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319 (1976) (“Mathews”). Doe 380316, 473 Mass. at 309. The Mathews test, as summarized by the SJC in Doe 380316,
balances the private interests affected by an agency decision; the risk of an erroneous deprivation of those interests; the probable value, if any, of additional or substitute procedural safeguards; and the governmental interests involved.
473 Mass. at 303. Under the Mathews test, the level of due process required varies with the importance of the interests at stake. “[Deprivation of more extensive private interests requires greater procedural protections.” Id. at 309.
II. Allocation of the Burden of Proof at Sex Offender Reclassification Proceedings
The first question posed in this case is which side properly bears the burden of proof at a reclassification hearing that is conducted in response to a registered sex offender’s request for reclassification. The Sex Offender Registry Law is silent as to which side bears the burden of proof in such reclassification proceedings. See G.L.c. 6, §178L(3). The Board, acting in accordance with its Second Path Regulations, placed the burden on Petitioner to prove at his reclassification hearing in February 2014 that “his ... risk of reoffense and the degree of dangerousness he . . . poses to the public has decreased since his or her final classification.” 803 Code Mass. Regs §1.37C(2)(c). Petitioner argues that shifting the burden of proof to him (or to any other sex offender) in a reclassification proceeding constitutes an error of law and violates his right to due process of law. Referencing the SJC’s recent decision in Doe 380316, Petitioner asserts that,
[t]o the extent that the [Supreme Judicial] Court has determined that due process is not satisfied at an initial classification when the Board is only required to prove its case by a preponderance, due process cannot be satisfied when that burden is shifted to the Petitioner at a reclassification hearing which implicates the same, extensive privacy interests.
Plaintiffs Memorandum of Law in Support of Motion for Judgment on the Pleadings, dated June 29, 2016 (“Petitioner Memo.”), at 22.
The Board argues, in response, that it is logical and appropriate to place the burden of proof on a registered sex offender who seeks reclassification because, in doing so, it is the offender who seeks to “change the status quo,” and who has “freer access to ... evidence” concerning his or her current risk of re-offense and/or level of dangerousness. Board Memo, at 13-14. The Board asserts that “[p]lacing the burden of proof on [Petitioner], under these circumstances, does not represent unconstitutional burden shifting.” Id. at 15. The Board also argues that it is appropriate to place the burden of proof on a registered sex offender who seeks reclassification because, having already been classified as a sex offender, such a person has “no liberty interest at stake.” Id.
The Board’s assertion that registered sex offenders, like Petitioner, who seek reclassification of their sex offender status “have no liberty interest at stake” is plainly wrong. The SJC first held almost twenty years ago that a sex offender “has sufficient liberty and privacy interests constitutionally protected by art. 12 that he is entitled to procedural due process before he may be required to register and before information may properly be publicly disclosed about him.” Doe v. Attorney General, 426 Mass. 136, 143 (1997) (“Doe v. A.G.”). Other, subsequent SJC decisions repeatedly have recognized and endeavored to safeguard that same liberty interest. See, e.g., Doe 380316, supra, 473 Mass. at 311 (a sex offender’s “risk classification level... has dramatic consequences for his liberty and privacy interests . . .”); Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 106 (2014) (“Doe 68549”) (“We have emphasized that the sex offender registration requirement implicates constitutionally protected liberty and privacy interests”) (internal quotation marks and citation omitted); Poe v. Sex Offender Registry Bd., 456 Mass. 801, 813 (2010) (“Poe”) (“At stake in a classification hearing is the sex offender’s constitutionally protected liberty and privacy interest in avoiding registration and public dissemination of registration information”) (inter *132 nal quotation marks and citation omitted); and Doe 972, 428 Mass. at 100 (“Sex offenders have a constitutionally protected liberty and privacy interest in avoiding registration and public dissemination of registration information”).
The Board also is wrong in its belief that a sex offender’s liberty interest in avoiding registration and public dissemination of his or her registration information disappears after the offender’s original classification. Sex offender registration “is a continuing, intrusive, and humiliating regulation of the person himself.” Doe v. A.G., 426 Mass. at 149 (Fried, J., concurring). See also Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 792 (2008) (quoting Doe v. A.G., supra). In this context, the opportunity for reclassification,
balances the clearly articulated purpose of the legislation to protect vulnerable victims with the also clearly articulated constitutional rights of a sex offender. It provides the sole mechanism for protection of an offender’s constitutionally based rights where the passage of time has reduced the risk of dangerousness such that the Commonwealth’s interest in disclosure is eroded, properly permitting him to obtain a lower classification level.
Doe, Sex Offender Registry Bd. No. 16748 v. Sex Offender Registry Bd., 82 Mass.App.Ct. 152, 162 n. 11 (2012). See also Doe 68549, 470 Mass. at 106 (“We have emphasized that the sex offender registration requirement implicates constitutionally protected liberty and privacy interests. Accordingly, careful and individualized due process is necessary to sort sexual predators likely to repeat their crimes from large numbers of offenders who pose no danger to the public”) (citations omitted). These holdings, and others, make it clear that a sex offender continues to have a constitutionally protected liberty interest in his or her classification so long as he or she remains obliged to register with the Board. See Doe v. Sex Offender Registry Bd., Mass.Super.Ct., No. 2010-4044-A, 2011 WL 1118465, at *5 (Mass.Super. 2011) (“[OJnce classified, a registered sex offender has a liberty and privacy interest in obtaining a lower classification some years after the initial classification, if the facts warrant”).
Having determined that Petitioner has an ongoing liberty interest in his sex offender classification level, the immediate question presented is whether it was constitutionally permissible for the Board to require Petitioner to prove at his February 2014 hearing that his circumstances justified reclassification to a lower level.
The SJC addressed the issue of burden-shifting in directly analogous circumstances in Care & Protection of Erin, 443 Mass. 567 (2005) (“Erin”). Erin was a teenager who the Juvenile Court had placed in the Department of Social Services’ (“Department”) custody and care in November 2000 because her natural mother then was unable to care for her. Id. at 568. Section 24 of General Laws c. 119 authorizes the Department to petition the Juvenile Court for an order directing that a child in need of care or services be committed to the Department’s custody in appropriate circumstances, and Section 26 of General Laws c. 119 sets forth the procedure for deciding such a petition. G.L.c. 119, §§24, 26. The SJC long ago held in Custody of a Minor, 389 Mass. 755 (1983), that “[e]vidence that is at least ‘clear and convincing’ is constitutionally required for a finding of parental unfitness.” 389 Mass, at 766. When Erin and her mother filed petitions to return Erin to her mother’s care in the spring of 2003, the Juvenile Court interpreted the SJC’s holding as requiring the mother to prove, by clear and convincing evidence, that she was fit to resume legal custody of her daughter. 443 Mass. at 569. The Juvenile Court ultimately found that Erin’s mother remained unfit to retake custody and denied the petitions. Id. at 570. Both Erin and her mother appealed, and the SJC took the case from the Appeals Court on its own motion. Id. at 567, 569.
The SJC described the question to be resolved as whether “the Department ... or a parent bears the burden of proving that a child is still in need of care and protection where a party subsequently files a petition for review and redetermination after the initial determination pursuant to G.L.c. 119, §26, that the child was in need of care and protection.” Id. at 567. It started its analysis by affirming its prior holdings that “[p]arents have a fundamental liberty interest in maintaining custody of their children, which is protected by the due process clause of the Fourteenth Amendment to the United States Constitution,” and that “[d]ue process requirements must be met where a parent is deprived of the right to raise his or her child.” Id. at 570-71 (citing Care & Protection of Robert, 408 Mass. 52, 58 (1990), and the cases cited therein). From these holdings, the SJC concluded that “it is never permissible in an initial care and protection proceeding to shift the burden of proof to the respondent parent.” Id. at 571. The Court further concluded that, because a petition for review and redetermination of child custody is merely a “readjudication” of the juvenile court’s prior custody order and “implicates the same liberty interests that exist at an initial determination that a child is in need of care and protection,” it saw “no reason to shift the burden from the department in a review and redetermination proceeding.” Id. Accordingly, the Court held that, “in a petition for review and redetermination, the department bears the ultimate burden to prove that the child is still in need of care and protection ... by clear and convincing evidence.” Id. at 572.
The SJC’s holding in Erin has logical application to the Board’s proceedings on Petitioner’s request for reclassification. Similar to the mother whose parental rights were at issue in Erin, Petitioner initiated the reclassification proceeding at issue in this case. Sim *133 ilar to the mother in Erin, Petitioner has a constitutionally-protected liberty interest that entitles him “to procedural due process before he may be required to register [as a sex offender] and before information may properly be publicly disclosed about him.” Doe v. A.G., 426 Mass. at 143. Similar to the mother in Erin, Petitioner’s liberty interest is of sufficient importance that it cannot be abrogated absent “clear and convincing evidence.” Doe 380316, 473 Mass. at 314. And similar to the mother in Erin, Petitioner’s request for reclassification effectively constitutes a “readjudication” of the Board’s initial determination that Petitioner qualifies as a Level 3 sex offender and “implicates the same liberty interests that exist[ed] at [the] initial determination.” Erin, 443 Mass. at571. For these reasons, and having in mind the elements of the test enunciated in Mathews, supra, this Court has little difficulty in concluding that the Board committed an error of law and violated Petitioner’s rights under both the Fourteenth Amendment to the United States Constitution and Art. 12 of the Massachusetts Declaration of Rights, by placing the burden on Petitioner to prove at his reclassification hearing in February 2014 that his risk of re-offense and the degree of dangerousness he poses to the public had decreased since his original classification in 2007.[9]
Deciding that the Board bears the ultimate burden of proof at á sex offender reclassification hearing does not resolve, however, the question of whether the Board may require Petitioner (or any other registered sex offender) to come forward with some evidence of a meaningful change in circumstances in order to justify a reevaluation of his or her existing level classification. The Board argues, not illogically, that a sex offender who requests reclassification effectively seeks to alter the “status quo,” an effort that traditionally has carried with it some form of “burden of persuasion.” Board Memo, at 13-14.
The Court agrees with the Board that requiring a sex offender who seeks reclassification to satisfy an initial burden of production is both logical and constitutionally permissible. In reaching this conclusion, the Court again looks to the SJC’s decision in Erin. After deciding the burden of proof issue, the SJC went on to hold in that case that,
[a]lthough the department retains the ultimate burden of showing that the child is still in need of care and protection, we conclude that the party filing a petition for review and redetermination has an initial burden of production that must be met in order to trigger the department’s burden. The party filing the petition must present some credible evidence that circumstances have changed since the initial determination such that the child may no longer be in need of care and protection. Once the party filing the petition meets its burden of production, the department must make its showing.
443 Mass. at 572.
This Court is disinclined to reinvent wheels when no reinvention is necessary. It also is this Court’s duty, when faced with a question of unsettled law, to resolve the question, if possible, in harmony with pre-existing law. See, e.g., City of Everett v. City of Revere, 344 Mass. 585, 589 (1962) (“A statute is to be interpreted with reférence to the pre-existing law... If reasonably practicable, it is to be explained in conjunction with other statutes to the end that there may be a harmonious and consistent body of law . . .”) (internal quotation marks and citations omitted). Adoption of the two-step proof procedure approved by the SJC in Erin with respect to sex offender reclassification proceedings advances both of these goals. More importantly, it protects a registered sex offender’s right to have his or her level classification reevaluated, when the circumstances warrant it, in a manner that accords with due process, while ensuring that important public resources are not wasted on unjustified or frivolous reclassification requests.
Accordingly, the Court concludes that, upon remand of this action (see Discussion Section IV, infra), Petitioner shall have the burden of presenting some credible evidence to the Board that circumstances with regard to his risk of re-offense and/or the degree of dangerousness that he poses to the public have changed since his initial classification, such that reducing his classification level would be appropriate. If and when Petitioner meets his burden of production, the Board will have the burden of proving Petitioner’s current, appropriate classification level. Because “sex offender risk classifications must be established by clear and convincing evidence in order to satisfy due process,” Doe 380316, 473 Mass. at 314, the Board will be required to meet its burden by clear and convincing evidence.[10]
III. Petitioner’s Right to Have the Assistance of Counsel at his Reclassification Hearing
The second question posed in this case is whether a registered sex offender has a right to the assistance of appointed legal counsel at a reclassification hearing that is conducted in response to the offender’s request for reclassification. Unlike the question of which side bears the burden of proof, the Sex Offender Registry Law is not silent as to whether indigent, registered sex offenders are entitled to have the assistance of appointed counsel at their reclassification hearings. Section 178L(3) expressly recognizes “the offender’s right to retain counsel for the hearing, and the offender’s right to have counsel appointed if the offender is indigent. . .” G.L.c. 6, §178L(3).
As discussed at pages 6-7, supra, the Board argues that Section 178L(3), and the statutory protections afforded to sex offenders by Section 178L(3), do not apply to reclassification hearings conducted in response to the offender’s request for reclassification because such proceedings are not undertaken by the Board “on its own initiative or upon written request by *134 a police department or district attorney ...” Board Memo, at 7-8. Implicit in this argument (and confirmed by the Board’s counsel at oral argument on Petitioner’s motion for judgment on the pleadings) is the notion that the Board has no duty to seek, and no interest in seeking, to reduce a sex offender’s classification level “on its own initiative.” The Board further argues that indigent, registered sex offenders have no constitutional right to the assistance of counsel at reclassification hearings conducted in response to an offender’s request for reclassification because such proceedings are civil in nature and, once again, “do[ ] not affect [the offender’s] liberty and privacy interests . . .” Id. at 9. Lastly, the Board asserts that providing appointed counsel to indigent, registered sex offenders who seek reclassification,
would create a financial burden on the Commonwealth as it would be required to expend attorneys fees yearly for thousands of indigent sex offenders, each of whom would be eligible for attorneys fees every three years thereafter.
Id. at 10.
Petitioner asserts that the provisions of Section 178L, read in their entirety, demonstrate an intention on the part of the Legislature “to ensure each individual a meaningful and fair hearing in the context of the substantial invasion of individual privacy and liberty-occasioned by the [sex offender] classification system.” Petitioner Memo, at 16. He further asserts that, because the core issue presented in both initial classification hearings and in reclassification hearings is effectively the same (Le., “determining the offender’s current risk of re-offense and degree of dangerousness”), the due process protections afforded to sex offenders in each setting, including the right to appointment of counsel for indigent offenders, are (or should be) the same. Id. at 16, 20-21.
No reported Massachusetts appellate case has ruled that an indigent sex offender has a constitutional right to have the assistance of legal counsel at his or her initial classification hearing.[11] This may be attributable, as least in part, to the Legislature’s preemptive decision in 1999 to amend the Sex Offender Registry Law (see St. 1999, c. 74, §2) to grant indigent sex offenders a statutory right to counsel for purposes of initial classification hearings. See G.L.c. 6, §178L(2) (‘The board shall inform offenders requesting a hearing under the provisions of subsection (1) of their right to have counsel appointed if a sex offender is deemed to be indigent . . .”}. See also Poe, 456 Mass, at 812 n.10 (observing that 1999 amendments to Registry Law “followed several decisions of this court holding parts of the [prior] Sex Offender and Community-Notification Act unconstitutional for failing to comport with due process requirements”). This Court need not decide whether indigent sex offenders have a constitutional right to the assistance of legal counsel at reclassification hearings they request, however, because Section 178L(3), properly interpreted, grants them that right.
More specifically, the Court finds the Board’s reading of Section 178L(3) as not extending to “sex offender initiated” reclassifications to be unduly restrictive and reflective of a basic misperception of the Board’s role under the Sex Offender Registry Law. As noted at page 4, supra, Section 178L(3) does not distinguish between reclassification proceedings that may be conducted for the purpose of increasing a sex offender’s classification level, and reclassification proceedings that may be conducted for the purpose of decreasing a sex offender’s classification level. Id, The Board nonetheless argues that the opening language of Section 178L(3) — which states, in relevant part, that “(t]he board may, on its own initiative..., seek to reclassify any registered and finally classified sex offender” — necessarily limits Section 178L(3) to proceedings conducted for the purpose of increasing a sex offender’s classification level because the Board rarely, if ever, would take action to decrease a registered sex offender’s classification level.
The law, however, requires otherwise. An examination of the full Sex Offender Registry Law discloses that the Board’s statutory responsibilities are not limited to initially classifying and listing known sex offenders in a sex offender registry. Rather, the Board has an ongoing duty to collect information “that may be relevant to the board’s determination or reevaluation of a sex offender’s level designation,” and to take appropriate steps to “update and maintain” the “comprehensiveness, clarity and effectiveness of information” that it collects. G.L.c. 6, §178K(4). These directives disclose the Legislature’s intention that the Board, for reclassification purposes, collect and take action on all available information concerning a sex offender’s current risk of re-offense and degree of dangerousness, irrespective of whether the information indicates that a higher or lower classification level may be called for. To conclude otherwise not only would require the Court to ignore the plain language of the Sex Offender Registry Law, also would undermine the law’s goal of ensuring accurate offender classifications. As the SJC recently stated in Doe 380316,
the State . . . has an interest in avoiding over-classification, which both distracts the public’s attention from those offenders who pose a real risk of reoffense, and strains law enforcement resources. And the State has no interest in making erroneous classifications and implementing overbroad registration and notifications.
473 Mass. at 313-14 (internal quotation marks and citations omitted, and emphasis removed). See also Adamowicz v. Ipswich, 395 Mass. 757, 760 (1985) (The courts will not interpret a statute “so as to render it or any portion of it meaningless,” or in a manner that would defeat its legislative purpose “if the statutory language is fairly susceptible to a construction that would lead to a logical and sensible result”) (internal quotation marks and citations omitted).
*135 Interpreting Section 178L(3) as granting registered sex offenders the right to assistance of appointed counsel at reclassification hearings they request also is consistent with other provisions of the Sex Offender Registry Law, which disclose a general legislative desire to ensure that sex offenders have effective legal representation at all levels of the registration and classification process. For example, in addition to granting indigent sex offenders the right to appointed counsel at initial classification hearings before the Board, see G.L.c. 178L(2), the Registry Law expressly grants indigent offenders the right to appointed counsel in any action “seek[ing] judicial review, in accordance with section 14 of chapter 30A, of the board’s final classification, reclassification and registration requirements.” See G.L.c. 6, §178M. This means that, if the Board’s position is credited, indigent sex offenders have an absolute statutory right to counsel at the start of the registration and classification process (re., during initial classification), and at the end of the registration and classification process (Le., during eventual judicial review), but not necessarily in the middle of the registration and classification process (Le., during reclassification proceedings requested by the offender). The illogic of such an “on-again, off-again” result is self-evident.
If, however, the text of Section 178L(3) leaves any doubt as to whether its procedures and protections apply to reclassification hearings conducted in response to a request for reclassification made by the offender, Petitioner still is entitled to the benefit of those protections under the “rule of lenity.” See, e.g., Commonwealth v. Samuel S., 476 Mass. 497, 506 (2017). Under the rule of lenity, if the court “find[s] that [a] statute is ambiguous or [is] unable to ascertain the intent of the Legislature, the defendant is entitled to the benefit of any rational doubt.” Id. (quoting Commonwealth v. Richardson, 469 Mass. 248, 254 (2014) (“Richardson”)). The rule of lenity applies to criminal statutes, Richardson, 469 Mass. at 254, and likely applies to civil statutes where a “violation of the statute may trigger criminal penalties,” DiFiore v. American Airlines, Inc., 454 Mass. 486, 497 n. 12 (2009). Application of the rule of lenity in the circumstances of this case mandates a ruling that, to the extent that the language of Section 178L(3) is ambiguous, Petitioner is entitled to the full benefits of that provision, including the “right to have counsel appointed” to represent him at his reclassification hearing based on his indigency. G.L.c. 6, §178L(3).
For the foregoing reasons, the Court concludes that the statutory protections afforded to sex offenders by Section 178L(3), including an “offender’s right to have counsel appointed if the offender is indigent,” applies with equal force to all reclassification hearings that the Board may conduct, including hearings held in response to a request for reclassification made by an offender. Id.
The conclusion that Section 178L(3) grants indigent sex offenders the right to assistance of appointed counsel at reclassification hearings they request not only gives logical effect to the language of the Sex Offender Registry Law, it also makes good, practical sense. The Board predicts that recognizing such a right “would create a financial burden on the Commonwealth” (Board Memo, at 10), but the resulting burden is likely to be no greater — and may even be substantially less — than the one the Commonwealth already bears. As previously noted, the Commonwealth currently is statutorily obliged to provide legal counsel for all indigent sex offenders who seekjudicialreviewunder G.L.c. 30A, §14, of an adverse reclassification decision issued by the Board. See G.L.c. 6, §178M. The judicial review process, in and of itself, can be long and expensive. It is reasonable to assume that some number of judicial review proceedings could be avoided entirely if indigent offenders were to be given the assistance of counsel at the earlier, much more abbreviated hearing stage. This Court lacks the data necessary to perform a definitive cost/benefit analysis, but it has reason to believe that the outcome of any such analysis likely would not support the Board’s dire prediction.
IV. The Validiiy of the Board’s Reclassification Order under G.L. 30A, §14
The final question posed in this case is whether the Board’s Reclassification Decision denying Petitioner’s request for reclassification was “arbitrary or capricious, an abuse of discretion, or not in accordance with law” such that a remand under G.L.c. 30A, §14, is called for. Doe 10800, 459 Mass. at 632-33. The Court effectively answered this question when it determined that the Board committed an error of law and violated Petitioner’s constitutional rights by placing the burden on Petitioner to prove at his reclassification hearing in February 2014 that his risk of re-offense and the degree of dangerousness he poses to the public had decreased since his original classification in 2007. See discussion at pages 14-21, supra. The Board’s error only can be resolved by remanding Petitioner’s case for a rehearing. G.L.c. 30A, §14(7) (authorizing reviewing court to “remand the matter for further proceedings before the agency”). See also Doe 380316, 473 Mass. at 315 (vacating and remanding Board decision that applied wrong standard of proof).
Order
For the foregoing reasons, IT IS HEREBY ORDERED THAT Petitioner’s motion for judgment on the pleadings (Docket No. 24.0) is ALLOWED. The May 28, 2014 Order of the Sex Offender Registry Board denying Petitioner’s motion for reclassification is VACATED, and the matter is REMANDED to the Board for further proceedings consistent with this decision and order. Such proceedings shall be given priority by the Board, with a rehearing to be conducted no later than ninety (90) days from the date of this decision *136 and order, and with a final determination made as soon as practicable thereafter.
It is further ORDERED, ADJUDGED, and DECLARED that judgment shall enter in favor of Petitioner on Count IX of his Amended Complaint seeking declar-atoiy judgment -with respect to the Board’s regulations and procedures for conducting sex offender reclassification hearings in response to requests for reclassification made by the offender. The Court declares that:
(a) To the extent that Board’s existing regulations and procedures place the burden on a registered sex offender who seeks reclassification to prove that his or her risk of re-offense and/or the degree of dangerousness he or she poses to the public has decreased since the offender’s original classification, such regulations and procedures violate the offender’s right to due process under both the Fourteenth Amendment to the United States Constitution and Art. 12 of the Massachusetts Declaration of Rights, and are void and unenforceable; and
(b) To the extent that Board’s existing regulations and procedures fail to provide for the appointment of legal counsel to represent an indigent, registered sex offender who seeks reclassification, such regulations and procedures violate, inter alia, G.L.c. 6, §178L(3), and are void and unenforceable.
In light of the Court’s remand order, all other claims of Petitioner are DISMISSED WITHOUT PREJUDICE as moot.

 Nhe Court derives the background facts from the administrative record filed in this case, see G.L.c. 30A, §14(4) and (5), and matters subject to judicial notice under G.L.c. 30A, §6.

 The citation provided is to the Board’s regulations as they existed in 2013-2014, when Petitioner’s request for reclassification in this matter was heard and denied by the Board. The current version of the Board’s First Path Regulations, retitled “Board’s Reclassification of Sex Offender,” can be found at 803 Code Mass. Regs. §1.32.

 Once again, the citation provided is to the Board’s regulations as they existed in 2013-2014. The current version of the Board’s Second Path Regulations, which still is titled “Sex Offender’s Request for Reclassification,” can be found at 803 Code Mass. Regs. §1.31.

 The version of the Board’s Second Path Regulations in effect in 2013-2014 timeframe required the sex offender to sustain this burden of proof by a “preponderance of the evidence.” See 803 Code Mass. Regs. §1.37C(2)(c) (2013). The current version of the Board’s Second Path Regulations now require the sex offender to sustain this burden of proof by “clear and convincing evidence.” 803 Code Mass. Regs. §1.31 (2)(c) (2016).

 A copy of the Board’s Reclassification Decision is appended to Petitioner’s Amended Complaint for Judicial Review, Declaratory and Injunctive Relief, dated May 28, 2016 (“Amended Complaint," Docket No. 22.0) as Exhibit A.

 The full text of Petitioner’s written request for reclassification (AR at 107) reads as follows:
To whom it may concern,
I am writing this letter to request a reduction in my current status as level 3 sex offender. First, I would like to accept full responsibility for my poor choices and behavior. I have a long history of criminal activity which has had an impact on innocent people. I express sincere regret for affecting others in a negative way and have made major changes in my life. I admit to having a history of alcoholism and drug addiction. I believe that my past behavior is directly related to my substance abuse issues. I am currently sober and have not engaged in any such conduct in 7 years. I am currently homeless and am finding it extremely difficult to put my life back together. There are many people who are aware of my history and status as a level 3 sex offender which make[s] it hard to move on in my life. This public information creates a barrier for me to gain employment and become a productive member of society. I am truly a changed man and would like an opportunity to start my life over again. Please take this request into consideration.
Sincerely,
[Petitioner]

 Whether a registered sex offender can mount a constitutional challenge to procedures or regulations promulgated by the Board solely through an action seeking judicial review under G.L.c. 30A, §14, appears to be an open question. The SJC held in Doe 10800 that it lacked jurisdiction to hear and decide an offender’s claim that the Board’s use of various allegedly inaccurate classification “factors” violated due process because “[a] challenge to the constitutionality of a general regulation cannot be resolved by requesting declaratory relief in an appeal from an administrative agency decision ...” 459 Mass. at 630. More recently, however, the SJC heard and decided an offender’s constitutional challenge to the statutorily-mandated standard of proof to be applied in Board classification proceedings in the context of what was strictly an action for judicial review under G.L.c. 30A, §14. See Doe 380316, 473 Mass. at 299-301 (“Doe sought judicial review in the Superior Court, pursuant to G.L.c. 30A, § 14, and G.L.c. 6, § 178M”). The question probably is moot for purposes of this case, however, because Petitioner, with leave of court, has raised his constitutional claims both as an action for judicial review under G.L.c. 30A, §14, andas a separate and distinct claim for declaratory relief under G.L.c. 231A, § 1. In doing so, he has expressly complied with the dictates of Doe 10800, 459 Mass. at 629 (“A challenge to the constitutionality of a regulation of general application is appropriately presented as an action for declaratory judgment,” citing G.L.c. 30A, §7).

 In analogizing the circumstances and issues presented in this case to those presented in Erin, supra, this Court takes some comfort in knowing that the SJC previously has analogized to child care and protection proceedings in determining the due process requirements for sex offender classification proceedings. See Poe, 456 Mass. at 811-13 (analogizing to child care and protection proceedings in holding that sex offenders are entitled to the effective assistance of counsel at classification hearings).

 Although the issue of what standard of proof applies in reclassification proceedings conducted in response to a registered sex offender’s request for reclassification is not presented by Petitioner’s claim for judicial review of his 2014 Reclassification Decision pursuant to G.L.c. 30A, §14, it is fairly raised by Petitioner’s newly-added claim for a declaratory judgment pursuant to G.L.c. 231 A, §1.

 One reported decision by the Massachusetts Appeals Court, Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass.App.Ct. 639 (2012), has reached a contrary conclusion. Id. at 646 (“Although classification and registration under [the Sex Offender Registry Law] may touch on liberty interests, the proceedings are not criminal in nature, and therefore do not implicate the right to counsel under either constitutional provision" (internal citations omitted)).